[No. 4887. Decided April 21, 1904.]

JOHN McCONKEY, *Appellant,* v. OREGON RAILROAD & NAVIGATION COMPANY, *Respondent.*[1]

RAILROADS—LICENSEE ON TRACK—BRIDGE MADE DANGEROUS BY REPAIRS—DUTY OF RAILROAD COMPANY. Although a railroad company has permitted its bridge to be used as a thoroughfare by pedestrians, it is not liable to a person using the same for his own convenience, for injuries sustained by reason of a hole thirty inches wide left by the company while repairing the bridge, since such defect does not create a concealed danger, and the company's liability to mere licensees is limited to avoiding wilful wrong and wanton carelessness.

SAME—WALKING ON RAILROAD BRIDGE AT NIGHT—CONTRIBUTORY NEGLIGENCE. A licensee upon a railroad bridge who was injured by falling through a hole, was guilty of contributory negligence as a matter of law in undertaking to walk thereon in the night, where the ties were some inches apart and it was so dark that he could not see the ties or the hole.

Appeal from a judgment of the superior court for Spokane county, Belt, J., entered July 3, 1903, upon sustaining a demurrer to the complaint, dismissing an action for personal injuries sustained by a pedestrian in falling through a railroad bridge. Affirmed.

*Barnes & Latimer* (*Alfred M. Craven,* of counsel), for appellant.

*Cotton, Teal & Minor, Lester S. Wilson,* and *Samuel R. Stern,* for respondent.

HADLEY, J.—This is an action whereby the plaintiff seeks to recover damages for injuries received from falling through a bridge on the line of defendant's railroad. The substantial allegations of the complaint are, that on the 16th day of November, 1902, between the hours of

[1]Reported in 76 Pac. 526.

seven and eight o'clock, p. m., the plaintiff was traveling over and upon the defendant's right of way and track from the town of Wardner, Idaho, to the town of Cataldo, Idaho; that said railway between said places is constructed and maintained through a deep and narrow canyon, with high mountains on either side, and the defendant uses and occupies very nearly all, if not all, the space in said canyon, with its railway line; that there was no road or passageway on either side of the railway track for the plaintiff or the public to use in going from one of said places to the other; that the most direct and usual route for pedestrians, when traveling between said places, was over said railway track; that said railway track had been used by the public generally as a thoroughfare for people on foot, ever since the construction of the railway, without objection on the part of the defendant, and with its full knowledge and consent; that, on said line of railway and near to the town of Cataldo, the defendant maintains a bridge and trestle over a stream of water in said canyon; that said trestle is covered with ties, laid a few inches apart at right angles with the rails upon said track; that the general topography, and rugged condition of the country, on either side of said bridge, is the same as heretofore described, and the only means of crossing said stream by foot travelers, in going from Wardner to Cataldo, was over said trestle and bridge; that all of the above stated facts were known at the time by the defendant, and it had permitted the public to so use its track and bridge for a long period of time prior to the date of plaintiff's injuries; that when plaintiff had partially crossed over said bridge, he fell into a hole between the rails which had been previously left open and unguarded by the defendant; that ties at said place had been removed by defendant, leaving an open space about thirty

inches in width, all without notice to the plaintiff, and of which he ·had no knowledge; that plaintiff was wholly without fault on his part, and without any means of knowing of said defect or danger; that he could not, by the exercise of ordinary diligence and care, have avoided or discovered the danger, the night being dark and the danger undiscoverable; that in consequence of the removal of said ties, and the negligence of the defendant in not immediately replacing same, the plaintiff fell through said opening, and down a distance of twenty feet upon the rocks below, whereby he was injured. It is further alleged that the defendant was negligent in not replacing said ties, in not warning plaintiff of the danger, in leaving the hole unguarded, and in not providing for proper inspection of the bridge at said place. The defendant demurred generally to the complaint, and the same was sustained by the court. Plaintiff elected to stand upon his complaint, refusing to plead further, and thereupon judgment was entered dismissing the action. The plaintiff has appealed.

It is assigned that the court erred in sustaining the demurrer to the complaint, and in entering judgment of dismissal. It is appellant's theory that his complaint does not show that he was a trespasser, but that, by reason of the averment that respondent had for a long time permitted the use of its track and bridge by pedestrians and had consented thereto, he became a licensee. Upon the theory that his averments, as against demurrer, established the fact that he was a licensee, he urges that respondent owed him the duty of ordinary diligence and care to avoid injury. Appellant cites a number of cases, which he insists sustain the theory of respondent's liability here. Among the cases cited by him are the following: *Cahill v. Chicago etc. R. Co.*, 74 Fed. 285; *Hooker v. Chicago etc. R. Co.*, 76 Wis. 542, 44 N. W. 1085; *Hansen v.*

*Southern Pac. Co.,* 105 Cal. 379, 38 Pac. 957; *Thomas v. Chicago etc. R. Co.,* 103 Iowa 649, 72 N. W. 783, 39 L. R. A. 399; *Young v. Clark,* 16 Utah 42, 50 Pac. 832; *Barry v. New York etc. R. Co.,* 92 N. Y. 289, 44 Am. Rep. 377; *Cassida v. Oregon R. & Nav. Co.,* 14 Or. 551, 13 Pac. 438; *Roth v. Union Depot Co.,* 13 Wash. 525, 43 Pac. 641, 44 Pac. 253, 31 L. R. A. 855.

Each of the above cases involved the liability of a railroad company for injuries resulting from the movement of a train which ran over a person upon the railway track. In each case the location of the injured person with reference to the train, together with the topography and environment, were such as involved the question of recklessness and wantonness on the part of the engineer or train operators. Whether one be a trespasser or a licensee, a railroad company cannot escape liability, if it shall wantonly injure him when upon its track, and when his presence is discovered in time to avoid the injury by the exercise of reasonable care.

The distinction between the relations of a trespasser and a licensee to the railroad company seems to be as follows: In the case of the former, the company when moving trains is under no obligation to keep a special lookout for him, but if he is discovered upon the track in time to avoid injury by the exercise of reasonable care after such discovery, common humanity demands that such care shall be used. In the case of the licensee, the company when moving trains is charged with the additional duty of being in a state of expectancy as to the probable presence of persons upon the track at places where travel thereon is known to be customary and frequent. The care required in the case of the licensee, therefore, calls for both reasonable lookout in advance and a reasonable effort to avoid injury after

presence is discovered. Thus, in either case, the duty is the same after actual presence upon the track is discovered. In the above cited cases, discovery was made in each instance before the injury, and, without regard to whether the injured person was a trespasser or a licensee, wanton negligence was the controlling question in the case. We therefore believe the cases are not decisive of the one at bar. Here appellant was not run down by a train, and his presence upon the track was neither known nor discovered. It is true, it is alleged that respondent consented to the use which was being made of the track and bridge, but the allegations, taken together, show that it was such consent as may have been merely implied because no asserted objection, or actual effort to prevent such use, had been made.

Assuming, however, that appellant was a licensee by reason of the fact that respondent had never actually prohibited him and others from traveling there, what new obligation did that fact create on the part of respondent, under the peculiar facts of this case? If he was a licensee, then, it is true, respondent, as we have already seen, was under obligation to be on the lookout, and not negligently run him down with a train. But was it required to have regard to his convenience, rather than its own, in the repair of its track and bridge? Respondent had never assumed to keep in repair a highway for footmen. Appellant was certainly not a licensee in the sense of being invited to cross the bridge. For his own benefit only, he assumed to cross because the privilege had not been denied. Under such circumstances, we think he must be held to have taken the situation as he found it. *Cusick v. Adams,* 115 N. Y. 55, 21 N. E. 673, 12 Am. St. 772; *Schreiner v. Great Northern R. Co.,* 86 Minn. 245, 90 N. W. 400, 58 L. R. A. 75; *Reardon v. Thompson,*

149 Mass. 267, 21 N. E. 369; *Morgan v. Pennsylvania R. Co.,* 7 Fed. 78; *Sterger v. Van Sicklen* 132 N. Y. 499, 30 N. E. 987. In *Reardon v. Thompson, supra,* Justice Holmes observes as follows:

"But the general rule is that a licensee goes upon land at his own risk and must take the premises as he finds them. An open hole, which is not concealed otherwise than by the darkness of night, is a danger which a licensee must avoid at his peril;"

citing many cases. The exception to the rule, as above stated, is noted in the following quoted extract from Pollock on Torts, at pages 503, 504 (6th ed.):

"Persons who by the mere gratuitous permission of owners or occupiers take a short cut across a waste piece of land, or pass over private bridges or have the run of a building, cannot expect to find the land free from holes or ditches, or the bridges to be in safe repair, or the passages and stairs to be commodious and free from dangerous places. If the occupier, while the permission continues, does something that creates a concealed danger to people availing themselves of it, he may well be liable. And he would of course be liable, not for failure in a special duty, but for wilful wrong, if he purposely made his property dangerous to persons using ordinary care, and then held out his permission as an inducement to come on it. Apart from this improbable case, the licensee's rights are measured, at best, by the actual state of the property at the time of the license."

This case cannot, in any reasonable view, be said to come within the exception. To leave an open space thirty inches wide between the ties of a railroad bridge does not create a concealed danger. Any person with the sense of sight can easily see such space, under ordinary and usual conditions, and can also easily step across it. It is not charged that the hole was left with any wilful purpose to make the property dangerous. We therefore think

the complaint, at most, shows that appellant was no more than a bare licensee, and in such case respondent owed him no duty, except to avoid wilful wrong and wanton carelessness and neglect. In our view, the complaint shows no such neglect of duty, and we believe it would be so viewed in the minds of all reasonable jurors.

Other cases cited by appellant, not hereinbefore mentioned, we believe do not assist in the determination of this case. We will briefly review those cases. In *Davis v. Chicago etc. R. Co.,* 58 Wis. 646, 17 N. W. 406, 46 Am. Rep. 667, it was held, in the case of a licensee upon a railway track, that it was for the jury to determine whether it was negligence to leave a steam boiler and engine upon its track unattended, and whether the explosion which caused the plaintiff's injury was the result of such lack of attention. The act of leaving such a dangerous agency as an unattended and heated boiler and engine may well have been for the jury, on the principle that it may have been wanton neglect. The same was true in *Harriman v. Pittsburg etc. R. Co.,* 45 Ohio St. 11, 12 N. E. 451, 4 Am. St. 507, where a torpedo had been left in an exposed condition near the track and was picked up by a child of tender years, who was injured. In *Lillstrom v. Northern Pac. R. Co.,* 53 Minn. 464, 55 N. W. 624, 20 L. R. A. 587, the defendant had, for a long time, itself maintained for the public a crossing of its track at the place of injury. Planks were torn away from the crossing, and it was claimed that the injured one's sleigh caught in the defective crossing. The case was properly for the jury on the theory that, as the company had assumed to maintain the crossing for the public, it was its duty to keep it in repair. In *Tobin v. Portland etc. R. Co.,* 59 Me. 183, 8 Am. Rep. 415, the railroad company left

its depot platform in defective condition, and it was held liable, although the place was within the limits of a highway. This was also upon the theory that it had assumed to maintain the platform for the public, and thereby invited the presence of persons there. In *Campbell v. Boyd,* 88 N. C. 129, 43 Am. Rep. 740, the defendant permitted the public habitually to use his private bridge. He knew it was unsafe. He was liable on the theory that the injured party was, by his own conduct, induced to pass over the bridge for a lawful purpose. The bridge was used to reach defendant's mill. In *Graves v. Thomas,* 95 Ind. 361, 48 Am. Rep. 727, the public had by permission traveled on foot for years over an open city lot. It was held that, upon making a cellar excavation in the pathway, with a view to erecting a building, it was the owner's duty to put up some guard or warning for public protection. The court based its decision upon the ground that for a long period, the public, using a near-by sidewalk, had been permitted to use the path where the plaintiff fell, as a part of the sidewalk. Knowing that it had been for so long a time traveled as a sidewalk in a populous city, the defendant's conduct may well have been classified as wanton neglect. We have thus noted appellant's cited cases, and do not find that they apply to the facts of the case at bar.

We believe that the demurrer was properly sustained, not alone upon the ground of want of negligence on the part of respondent, but also upon the ground of contributory negligence. We think the complaint discloses, upon its face, such facts as must be held, as matter of law, to amount to contributory negligence. The conditions were certainly unusual. Under the darkness of night appellant was walking upon a mountain railroad. The place was in a

deep and narrow canyon. On either side the mountainous walls of the canyon rose precipitously. In this canyon was the trestle bridge over which appellant knew he must walk if he made the journey. He knew he must walk upon the ties of the bridge, placed some inches apart, and which, from the averments of his complaint, he could not see in the darkness. By the exercise of common judgment he should have known that, at best, the walk at such a time and place would be attended with great hazard. He knew that he was not upon a highway designed for pedestrians, but that it was built and maintained for railway purposes only. While he may have believed it was in such condition as would enable him to walk over it in safety, yet the environment, the time, and his relation to respondent, were such as gave him no right to act upon such belief, relying upon any duty of respondent to maintain for him a safe way. We believe any jury of reasonable men would be impelled to the conclusion that he took his chances, and that his injuries resulted from his own negligence. In such case it is the duty of the court to so decide, as a matter of law.

The judgment is affirmed.

FULLERTON, C. J., and DUNBAR, MOUNT, and ANDERS, JJ., concur.