[No. 5165.    Decided October 10, 1904.]

ISAAC M. CURTIS, *Respondent, v.* OREGON RAILROAD AND NAVIGATION COMPANY, *Appellant.*[1]

RAILROADS—CROSSINGS—KILLING STOCK ON TRACK—WANTON NEGLECT — CONTRIBUTORY NEGLIGENCE — EVIDENCE — SUFFICIENCY. In an action for the negligent and wanton killing of stock upon a railroad crossing, there was sufficient evidence to require the questions of negligence and wantonness and contributory negligence to be submitted to the jury, where it appears that the plaintiff and an assistant were driving a band of eighty-six cattle across defendant's railroad tracks at a point where grade approaches were made and gates maintained after the filling in of a trestle (one gate being five hundred feet down the track from the other), that the plaintiff thought the train had gone by and looked

[1]Reported in 78 Pac. 133.

and saw no train before opening the gates; that when the cattle were in the act of crossing the track, a passenger train came around a curve 1950 feet distant, at a high rate of speed, and no whistle was sounded, and no bell was rung until just before striking the cattle, after which the train ran two hundred yards before stopping, although there was a direct conflict as to the distance and the ability of the men to stop the train.

RAILROADS—LICENSEE OR TRESPASSER ON TRACK—PRIVATE CROSSING—EVIDENCE—SUFFICIENCY. In an action for the killing of stock upon a railroad track, it is a question for the jury whether the plaintiff was a trespasser, or licensee, where it appears that the track was originally built on a trestle, that a private crossing under the trestle was used for a long time, that, upon filling in the trestle, grade approaches were built and gates maintained, and used for crossing the track, and the plaintiff was driving a band of cattle through the gates and across the track at such point at the time they were struck.

SAME—DUTY TO LICENSEE AND TRESPASSER. In the case of a licensee upon a railroad track, the duty of the company is to exercise reasonable care in looking out for and avoiding injury to him; and in the case of a trespasser, the duty is to use reasonable care after discovering his presence, without any duty to be on the lookout.

RAILROADS—CROSSINGS—WANTON NEGLECT—TRIAL—SPECIAL VERDICT. In an action for the killing of stock upon the track through the alleged wanton neglect of the trainmen, a special verdict, to the effect that the engineer did not make every effort in his power to stop the train as soon as he saw the cattle, amounts to a finding of wanton neglect, and sustains a general verdict for the plaintiff.

DAMAGES—EXCESSIVE—AMOUNT ADMITTED. The defendant can not claim that damages for stock killed are excessive, where the amount found was the sum admitted in its answer.

Appeal from a judgment of the superior court for Whitman county, Chadwick J., entered December 19, 1903, upon the verdict of a jury rendered in favor of the plaintiff for $620 damages for stock killed at a railroad crossing. Affirmed.

*W. W. Cotton, M'Crosky & Canfield,* and *Lester S. Wilson,* for appellant. The plaintiff was guilty of contributory

negligence in driving a large band of cattle down the track five hundred feet to make this crossing without keeping a lookout for the train which was then due. *Ohio etc. R. Co. v. Eaves,* 42 Ill. 288; *Dickey v. Northern Pac. R. Co.,* 19 Wash. 350, 53 Pac. 347; *Haner v. Northern Pac. R. Co.,* 7 Idaho 305, 62 Pac. 1028; *McGill v. Minneapolis etc. R. Co.,* 113 Iowa 358, 85 N. W. 620; *Palmer v. Northern Pac. R. Co.,* 37 Minn. 223, 33 N. W. 707, 5 Am. St. 839; *East Tenn. etc. R. Co. v. Watters,* 77 Ga. 69; *Union Pac. R. Co. v. Hutchinson,* 39 Kan. 485, 18 Pac. 705; *Hanna v. Terra Haute etc. R. Co.,* 119 Ind. 316, 21 N. E. 903; *Nolan v. Central R. Co.,* 67 N. J. L. 124, 50 Atl. 348; *Forbes v. Atlantic etc. R. Co.,* 76 N. C. 454; *Fisher v. Farmer's Loan etc. Co.,* 21 Wis. 74; *Cleveland etc. R. Co. v. Ducharme,* 49 Ill. App. 520; *Young v. Hannibal etc. R. Co.,* 79 Mo. 341; *Smith v. Chicago etc. R. Co.,* 34 Iowa 508. The jury had no right to disregard the uncontradicted evidence that the engineer used all means in his power to stop the train. *Pennsylvania R. Co. v. Davis,* 4 Ind. App. 51, 29 N. E. 425; *Indianapolis etc. R. Co. v. Watson,* 114 Ind. 20, 14 N. E. 721, 15 N. E. 824, 5 Am. St. 578; *St. Louis etc. R. Co. v. Adams,* 24 Tex. Civ. App. 231, 58 S. W. 1035. There was no evidence of an act amounting to wanton neglect. *Huff v. Chicago etc. R. Co.,* 24 Ind. App. 492, 56 N. E. 932, 79 Am. St. 274; *Matson v. Port Townsend etc. R. Co.,* 9 Wash. 449, 37 Pac. 705; *Louisville etc. R. Co. v. Anchors,* 114 Ala. 492, 22 South. 279, 62 Am. St. 116.

*John Pattison,* for respondent.

HADLEY, J.—Respondent brought this suit to recover damages on account of the killing of his cattle by a train upon appellant's railroad. The complaint alleges that,

while respondent was driving a band of cattle across the railroad track, the appellant, in the operation of a train of cars, negligently struck the cattle, killing eight head and wounding six others. It is also averred that the persons operating the train could have stopped it, or slackened its speed, so as to have permitted the cattle to be driven off the track without injury; but that, in total disregard of respondent's rights, they, in a reckless, wanton, and malicious manner, struck and killed the cattle. The damages are laid in the complaint at $620.20. The answer denies that appellant was negligent, and affirmatively pleads contributory negligence on respondent's part. The cause was tried before the court and a jury, resulting in a verdict for respondent in the sum of $300. Appellant's motion for a new trial was denied, and judgment was entered for the amount of the verdict. This appeal is from the judgment.

There are no errors assigned upon the introduction of evidence or the instructions of the court. The appeal is submitted upon two propositions only: (1) That appellant's motion for nonsuit, or for a peremptory instruction in its favor, should have been granted; (2) that a new trial should have been granted. These questions are discussed together by counsel, and involve the sufficiency of the evidence only.

Briefly stated, the following, together with other testimony, was before the jury, when the motion for nonsuit was made: That respondent and an assistant were driving a band of eighty-six cattle, upon and across the railway track and right of way; that the right of way was fenced at said place, but there was a gate opening through the north fence and, at a distance of about five hundred feet below, another gate opened through the south fence; that the railway track at said place was originally built

upon a trestle, and that a private crossing under the trestle
had been for a long time used there; that, some time before
this accident, the railway company filled the trestle with
earth, making an elevated embankment grade at said point,
and, at the same time, made a grade from the side thereof
and where this road had formerly been, so as to form an
approach and crossing over the track; that said gates, and
the new graded crossing, had been often used for crossing
the track and right of way; that respondent believed it
was after train time, and that the train had gone along,
but that he first looked to see if any train was approaching,
and, seeing none, opened each of said gates, and then drove
the cattle through the north gate; that, when the cattle
were in the act of crossing the track, a passenger train was
discovered approaching from the east at a great rate of
speed, which ran into the cattle before anything could be
done in the way of removing them from the track; that no
whistle was sounded, and the bell was rung but two or
three times, just as the engine struck the cattle; that, for
a distance of nineteen hundred and fifty feet up the track,
in the direction from which the train came, one could stand
in the middle of the track and see the rails where the cattle
were crossing; that the train ran two hundred yards after
it struck the cattle before it stopped.

We think the above evidence was such as justified the
court in denying the motion for nonsuit. Even if respond-
ent was a trespasser at the time, there was sufficient evi-
dence to warrant submitting to the jury the question
whether appellant's train operators saw the cattle in time
to have stopped the train, and whether there was reckless
and wanton neglect on the part of appellant's employees.
The evidence concerning the maintaining of the gates by
appellant, its construction of the grade crossing, and the

frequent use thereof by respondent and others, was also such as left it for the jury to say whether these were maintained by appellant and used for the purposes of a crossing with its permission; and, if they should so find, it was also for them to .find whether the employees of appellant, in the exercise of proper care as to looking out for persons or animals crossing at said place, should have discovered the cattle in time to have avoided the injury. The testimony as to the crossing and its use, tending as it did to show that respondent was there by license, was also such as made it improper to say, as a matter of law, that he was guilty of contributory negligence, and that question also became one for the jury. It is true, appellant denies the truth of some of the above mentioned material testimony, but, upon the motion for nonsuit, it was the duty of the court to regard all the testimony then before the jury, and so considering it, we believe the motion for nonsuit was in all particulars properly denied.

The testimony introduced by appellant in some important particulars contradicted that of respondent's witnesses, particularly as to the distance from the crossing where the engineer could have seen the cattle. It was testified that, within the distance stated by respondent's witnesses, there was a curve in the track, and also a cut in the road bed, which obstructed the view of the track at the crossing until the train was within a few hundred feet of the crossing. The engineer testified that the train was within two hundred or three hundred feet of the cattle when he first discovered them; that the fireman first saw them and hallooed, "Look out; stock on the track;" that he immediately reversed the engine and applied the air brake and the emergency; that the curve in the track and the bell, sand box, and smoke stack on the engine pre-

-vented him from sooner seeing the cattle; that he could have stopped the train within seven hundred or eight hundred feet; that the train ran about three hundred and fifty or four hundred feet after it struck the cattle before it stopped. It will thus be seen that there was decided conflict in the evidence as to the distance the cattle could have been seen from the direction the train came; but it was for the jury to determine what was the truth, after weighing the conflicting testimony.

Appellant argues that respondent was not a licensee, but, as already indicated, the testimony was such that we think the court should not have held, as a matter of law, that he was not such. Considering that appellant maintained the gates at that place, the former use of the road under the trestle, the construction of a grade approach for a crossing after the trestle was filled, and its subsequent frequent use, it certainly should not be said, as a matter of law, that respondent was there without permission. If he was a licensee at said place, then the duty rested upon appellant to exercise reasonable care in looking out for persons and animals crossing there, and also reasonable care to avoid injury after discovery. If he was a tres- passer, then no duty rested upon the appellant to be upon the lookout for him. But as soon as his actual presence was discovered, the duty at once arose to exercise reasonable care to avoid injury. The distinction in the measure of duty between the case of a licensee and that of a trespasser is discussed in *McConkey v. Oregon R. & Nav. Co.*, 35 Wash. 55, 76 Pac. 526. The general principles and au- thorities cited and discussed there are applicable here. It was said that the appellant in that case was at least no more than an implied licensee, as the railroad company had affirmatively done nothing indicating its consent for

him to walk upon the trestle in the mountains. It was held
that in such case no duty rested upon the company to keep
the trestle in repair, so as to be safe for pedestrians, and
that he must have taken the situation as he found it. In
the case at bar, however, there is much testimony of posi-
tive acts of appellant tending to show that it prepared the
grade and gates for the purpose of permitting others to
cross its right of way and tracks; thus making it peculiarly
a question for the jury in this case whether respondent
was there under the rights created by a license, which had
been purposely and intentionally extended to the public to
cross at that place. In the case cited, however, it was
recognized that the company can not be permitted, by the
operation of a train, to wantonly injure a pedestrian upon
the trestle, whether he be a licensee or trespasser. So, in
this case, the element of wantonness, as we have seen, is in-
volved. The following special interrogatory was submitted
to the jury: "Did the engineer make every effort in his
power to stop the train as soon as he knew the cattle were
on the track?" The jury answered "No" to the above.
The special verdict amounts to a finding of wanton neglect,
and sustains the general verdict under any view of the
case herein discussed. The general principle that ques-
tions of negligence and contributory negligence, under con-
flicting testimony of the character shown in this case,
should be submitted to the jury, and that the verdict—un-
less clearly against the weight of the evidence—should
stand, has been so often held by this court that we do not
deem it necessary to cite the decisions upon that subject.

Appellant complains that the amount of the verdict is
not supported by the evidence. The evidence of respondent
showed much greater damages than the jury found, but
the amount found was the exact sum which appellant in its

answer admitted the damage to be. It is, therefore, not in position to complain

The new trial was properly denied, and the judgment is affirmed.

DUNBAR, ANDERS, and MOUNT, JJ., concur.

FULLERTON, C. J., concurs in the result.