[No. 7087. Decided March 28, 1908.]

EUGENE JOHNSON, *by His Guardian, etc., Respondent,* v. GREAT NORTHERN RAILWAY COMPANY *et al., Appellants.*[1]

RAILROADS—OPERATION—INJURY TO TRESPASSER ON TRAIN—CARE AS TO LICENSEE—NOTICE—QUESTION FOR JURY. There is no liability for injuries sustained while riding on a switching train without the knowledge of the company or its employees, and a verdict should be directed for the defendants, where it appears from plaintiff's evidence that, after riding a short distance by permission of, and with, the rear brakeman on a flat car, the plaintiff left the train at a point where it had stopped, and walked forward and climbed on a load of lumber near the middle of the train with boys who were hiding from the train crew, and fell upon attempting to pass over the tops of the cars, none of the train crew having any knowledge that the boys were on the train; since even if plaintiff was a licensee, the company's duty to exercise reasonable care was not violated.

TRIAL—QUESTION FOR JURY. Where the facts are admitted and show no negligence on the part of the defendant, the question is one of law for the court, and a verdict should be directed.

Appeal from a judgment of the superior court for Snohomish county, Black, J., entered May 29, 1907, upon the

[1]Reported in 94 Pac. 895.

verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by a minor, a trespasser, while riding on a freight train. Reversed.

*L. C. Gilman, R. C. Saunders*, and *M. J. Gordon*, for appellant Great Northern Railway Company.

*Ballinger, Ronald, Battle & Tennant*, for appellants O'Day *et al.*

*John E. Humphries* and *George B. Cole*, for respondent.

MOUNT, J.—Action for personal injuries. Plaintiff recovered a verdict and judgment for $10,000. Defendants have appealed.

At the trial of the cause the defendants moved for a directed verdict. Their motion was denied and they stood upon the evidence on the part of the plaintiff. After verdict the defendants moved for a judgment notwithstanding the verdict. This motion was denied, and a judgment was entered upon the verdict. The facts are therefore undisputed, and are as follows: On the 1st day of June, 1906, the respondent, Eugene Johnson, was fourteen years and nine months of age. He weighed from ninety-eight to one hundred pounds. He resided with his parents in the city of Everett. His father was an architect and his home surroundings were comfortable. He began going to school at the age of six years, and from that time to the date above stated had attended with about the same regularity as other boys of his age; had kept up with his classes, and passed his examinations at the ends of the years. During vacation periods he had worked at a drug store off and on for the period of two or three years, and had worked as usher at the theater a few times. The residence of his parents was situated about two blocks from the railroad tracks, and he was accustomed to seeing trains.

On the date stated the appellant the Great Northern Railway Company was operating a switching train consisting of about forty cars which were being moved out through its

yards in Everett to a smelter, a distance of two or three miles. This train was in charge of the appellant O'Day, who was a switch foreman acting as conductor. The appellant Kassebaum was employed thereon as rear brakeman. His duties required him to be on, and look out for, the rear end of the train. There was another brakeman by the name of Lynch, whose duties required him to be on the front end of the train. He was at his post. The proper and usual place for the conductor was on the foot board of the engine. He was at his post at the time referred to. The train was a loaded train consisting of box cars, flat cars, and other cars. It had no caboose or passenger cars attached and was not designed to carry passengers. The rear car was a flat car. Respondent called it a "gondola" car. While the train was moving through the yards at Everett, the respondent, Eugene Johnson, in company with a boy about his own age, approached the brakeman Kassebaum who was sitting on the rear of the rear car, and asked permission to ride. Kassebaum nodded his head, which the boys took to be an affirmative answer, and they caught the train and climbed on to the car with Kassebaum. They rode with him about a mile to a point known as "Blackman's mill," where the boys got off the car onto the ground and proceeded to walk along the track toward the front end of the train. When about the middle of the train, they discovered four other boys on a load of lumber. They then again climbed onto the train and joined the other boys, who were hiding from the train crew. There they played a game of cards until after the train had started and until the train ran within a couple of blocks of the smelter yards where they knew it was going to stop. The respondent then, in company with the other boys, climbed onto the top of the box cars and walked forward thereon, looking for a place to alight. In going forward over the top of the cars, they came to a car loaded with lumber. Two or three of the boys jumped onto this car of lumber and respondent attempted to do the same, but in some manner slipped and fell between the cars. The

train was moving about four miles per hour, and the wheels of one of the cars ran over and crushed both his feet.

It was not shown that the brakeman Kassebaum, or any of the train crew, knew that the boys were on the train after it left Blackman's mill, or that the boys intended to go any further. The boys did not see any of the crew, and none of the crew saw the boys after the train left the mill and until after the accident. All the boys except the respondent knew that they were not allowed on the train. It does not appear that O'Day, the conductor, had any knowledge whatever that the boys were on the train, and it does not appear that Kassebaum knew where the boys were after they got off the train at Blackman's mill. The point of the accident was about the middle of the train, twenty car lengths from the front and rear. There was no improper handling of the train, and no negligence of any kind, except the fact that the respondent was permitted or invited to ride on the rear of the car with the brakeman as above stated. Respondent had never ridden on a freight train before, did not know it was dangerous to walk on top of the cars, or to jump from one car to the other when the train was in motion. The distance the respondent attempted to jump, from the top of the box car to the lumber car where the lumber was not piled evenly, was about four feet. Respondent testified that he did not know it was dangerous to attempt to jump this distance. It was not shown that the brakeman Kassebaum had permitted the boys to walk on the tops of the cars, or that he knew they intended to do so, or that he saw them. There was some evidence that he might have seen them when the train passed a curve while they were on top of the cars.

It seems quite clear from these facts that there is no evidence of negligence on the part of the defendants in this case. If the respondent was a trespasser upon the train, the appellants owed him no duty except not to wantonly or wilfully injure him. It is claimed by respondent that he was not a trespasser, because he was invited by the brakeman to ride on

the rear car. It was not shown that the brakeman had any authority to invite any person to ride on the train. On the contrary it was shown that the train was in charge of the conductor, who was upon it at his station, and that it was generally known that boys were not permitted to ride thereon. The case in this respect is similar to the case of *Curtis v. Tenino Stone Quarries*, 37 Wash. 355, 79 Pac. 955, where we held that a boy, who had been driven away and subsequently was invited into a dangerous place by persons unauthorized so to do, was still a trespasser.

But assuming for this case that the respondent here was a licensee and that the other appellants were bound by the negligence of Kassebaum, it was the duty of the appellants then to exercise reasonable care to see that respondent was not injured. *McConkey v. Oregon R. & Nav. Co.*, 35 Wash. 55, 76 Pac. 526. This required the appellants to do no more than an ordinarily prudent person would do under the same circumstances. The boys rode with the brakeman on the rear car until they came to Blackman's mill. There the boys got off the train. They did not tell the brakeman that they intended to go further. The brakeman did not see them, and did not know that they were on the train after that time. He did not know where they were, and no other member of the train crew knew that the boys were about the train at all. Before any negligence could be charged against any of the defendants, it was necessary to show that they had notice that the boys were on the train and likely to do, or were attempting to do, what they did do. None of these facts were shown. When the boys left the train at Blackman's mill, the brakeman had a right to suppose that they would not again climb onto the cars unless something occurred to notify him otherwise. He certainly could not be held to look after their safety when he did not know, and had no reason to know, that they were on the train. It is true, the boys testified that they might have been seen by the train crew as the train passed around a curve when they were on top of the cars, but it is

quite clear that it was then too late to have prevented the injury, even if the trainmen could be held to know it would occur. We see no evidence of negligence in the case sufficient to take it to the jury.

Counsel for respondent devote several pages of their brief to a discussion of the rule that all questions of fact should be decided by the jury, etc. There can be no doubt about this rule, but in this case, as we have seen above, there is no question of fact. The facts are all admitted and, being so, show no negligence of the appellants. Where there is no evidence of a controlling fact, the question is one of law for the court. The negligence in this case is wholly that of the respondent. The trial court should therefore have directed a judgment for the appellant.

The judgment must be reversed and the cause ordered dismissed.

HADLEY, C. J., CROW, FULLERTON, DUNBAR, ROOT, and RUDKIN, JJ., concur.