[No. 8778.   Department One.   September 3, 1910.]

BURTON HILLIS *et al.*, *Respondents*, v. SPOKANE & INLAND EMPIRE RAILROAD COMPANY, *Appellant.*[1]

MASTER AND SERVANT—CONTRIBUTORY NEGLIGENCE—OBEYING ORDERS OF FOREMAN. A lineman on an electric railway is not guilty of contributory negligence in obeying an order of his foreman to push the tower car across a bridge, upon which they were when a work train was sighted half a mile away, the foreman having first ordered two men back to flag the train, as he had a right to assume that he would be protected.

SAME—RULES—NOTICE OF—DISOBEDIENCE BY FOREMAN. A lineman who had worked but twenty days for the company is not charged with an operating rule addressed to line foremen regarding protection of a tower car on the track by specified signals; and negligence of the foreman in failing to observe the rule cannot be attributed to the lineman.

[1]Reported in 110 Pac. 624.

Appeal from a judgment of the superior court for Spokane county, Huneke, J., entered November 3, 1909, upon the verdict of a jury rendered in favor of the plaintiffs, in an action for the death of a lineman employed upon an electric railway. Affirmed.

*Graves, Kizer & Graves*, for appellant.

*Black & Wernette* and *Danson & Williams*, for respondents.

MORRIS, J.—Respondents are heirs of John Hillis, deceased, and brought this action to recover damages for his wrongful death, occasioned by the alleged negligence of appellant. This appeal is taken from a judgment in their favor.

At the time of his death, deceased had been in the employ of appellant about twenty days, and was one of a crew of linemen under the direction of a foreman named Lavell. The crew left Coeur d' Alene on the morning of the injury at 6:20 on one of the appellant's electric trains, and went to a station called Curoe, where they had left the tower car used by them in their work. At this point there was some discussion as to whether they should proceed further at once or wait until a work train which was to leave Coeur d' Alene some twenty minutes after the train which carried the men to Curoe had passed. Lavell, the foreman, consulted a time table, and ordered the men to put the tower car on the track. This was done, and Lavell mounting to the top of the tower, inspected the trolley wire as the men pushed the car along the track. They proceeded in this manner about two miles, when they came to the bridge across the Spokane river. About the center of the bridge, which was some 240 feet long with approaches on both sides, Lavell, on the top of the tower, saw the work train approaching and so informed the men, at the same time sending back two of them to flag and stop the train. Coming down from the tower, he

ordered the remaining men to push the car across the bridge and take it off.  They proceeded to do so, and had gone about 140 feet when one of the men, not having heard any acknowledgment of the flag by the engine, looked back, and seeing the train approaching at such a rate of speed that it could not stop before it reached them, called to the men to protect themselves.  All did so except Hillis, who was struck and fatally injured before he could reach a place of safety.

At the time the work train was discovered it was about half a mile away, and approaching a curve on a down grade at about 35 or 40 miles an hour, as estimated by the engineer.  The fireman, sitting on the inside of the curve, saw the men on the bridge first and notified the engineer, who supposing that it was some one walking across the bridge and that they would find a place of safety on the stringers of the bridge, made no effort to stop the train, except to lessen the speed to what would be proper in rounding the curve.  The conductor, sitting in the cupola of the caboose, in the meantime had seen the tower car, and assuming that the engineer had not, from the fact that the speed of the train was not being diminished, he sent a brakeman to open the angle cock at the end of the caboose.  By this time the tower car had been seen by the engineer, who applied the full force of his air, which, acting with the open angle cock, he says caused him to lose control over it, and the wheels became locked and skidded over the rails.

Many assignments of error are made, going mostly to what appellant terms the contributory negligence of Hillis in voluntarily going out upon the bridge, knowing that the work train was following and that no flagman had been sent back to protect the tower car, and in not paying more attention to the approaching train after its discovery by Lavell.  There may be circumstances under which it might be held to be contributory negligence for one to attempt to cross a bridge, knowing a train was approaching and no effort was being made by himself or others for his protection,

but it does not seem to us that such a situation is before us. Deceased doubtless knew that, upon the discovery of the work train, two of his companions had gone back to flag it. At that time the train was such a distance away that this could be done with safety, and he had a right to rely upon its being successfully done and the train brought to a stop before it could injure him. In addition, the foreman Lavell, after seeing the train and ordering the flag out, ordered the men to push the car on across the bridge; Hillis had a right to assume that in obeying the order he would be protected from the coming train by Lavell who, knowing the situation, assured them by his order that they could proceed in safety. Even though he had some doubts about the matter, the law would protect him in relying upon the superior knowledge of his foreman and in carrying out the orders given him to proceed. It was plainly Lavell's duty to protect the men when they were pushing the car across the bridge and not permit them to go further than they could in safety. Had he done so the accident might have been avoided, but from the time he came down from the tower and ordered the car across, he seems to have been more intent on the protection of the car than the safety of the men. His failure to perform his duty in this regard was the negligence of the appellant. *Howard v. Delaware & H. Canal Co.*, 40 Fed. 195; *Hannibal & St. Joe R. Co. v. Fox*, 31 Kan. 586, 3 Pac. 320; *Davis v. New York etc. R. Co.*, 159 Mass. 532, 34 N. E. 1070; *Dunphy v. Boston Elevated R. Co.*, 192 Mass. 415, 78 N. E. 479. In fact appellant concedes there was sufficient evidence upon the question of the negligence of Lavell and those in charge of the work train.

The main contention of contributory negligence is based on the violation of a rule of the company in regard to danger signals, the violation of which appellant argues should be charged to deceased. The rule is as follows, under title "Line foreman":

"When working with the tower car on main track, will see that proper danger signals are displayed on both sides from one-half to one mile from where working, distance to be governed as to grades, curves, etc., but in no case to be less than eighteen pole lengths."

While the violation of this rule would establish the negligence of the foreman and thus create a liability on the part of the company, we can find nothing in the record that brings this rule to the knowledge of Hillis, or from which it would appear that he knew of its existence. He had only been employed about twenty days, and we cannot assume from such a service that he had any knowledge of the rules as to train service. It does not seem from the rule itself that the company anticipated the men to apprise themselves of these rules, since the rule is addressed to the "Line foreman" upon whom the duty of its enforcement rested. We cannot, therefore, agree with appellant that the failure of Lavell to observe this rule is contributory negligence in law chargeable to Hillis. Whether or not it was such in fact was, it seems to us, submitted to the jury and determined in a special verdict by which they found that Hillis did not know that the work train would or might overtake the line crew while working upon the bridge, and that he had no knowledge of its approach until "nearing" the west end of the bridge, which would be about the time when it was noticed by one of his companions, and all leaving the tower car, rushed for safety. From the evidence the jury were justified in finding that, irrespective of the situation in which Hillis might have been placed, either by the facts or the law, the appellant, through Lavell and the train crew, were guilty of gross negligence. *Curtis v. Oregon R. & Nav. Co.*, 36 Wash. 55, 78 Pac. 133.

We have examined the instructions given and refused which are included in the exceptions, and the other assignments of error suggested, and without setting them forth in detail,

we hold no error to have been committed, and the judgment is affirmed.

Rudkin, C. J., Fullerton, Chadwick, and Gose, JJ., concur.