[No. 12043. Department One. December 29, 1914.]

JENNIÉ KROEGER et al., Appellants, v. GRAYS HARBOR
CONSTRUCTION COMPANY, Respondent.[1]

DEATH—WRONGFUL DEATH—NEGLIGENCE—TRESPASSERS—DEGREE OF
CARE—CONTRIBUTORY NEGLIGENCE—EVIDENCE—SUFFICIENCY. One who
goes upon a trestle used in the construction of a jetty, in search of
employment, and after being refused, loiters about the place in a
dangerous position for an inexcusable length of time near the sweep
of a derrick used in unloading rock from a heavy skip, is a mere
trespasser, or at least but a licensee, whom the defendant was only
bound to refrain from wilfully and wantonly injuring; and he was
guilty of contributory negligence, precluding any recovery for his
death, when struck by the skip, where there was no evidence of an
intention to wantonly or wilfully injure him, or even that his pres-
ence was known.

Appeal from a judgment of the superior court for Chehalis
county, Sheeks, J., entered February 9, 1914, dismissing an
action for wrongful death, upon granting a nonsuit.
Affirmed.

*Hugo Metzger* and *A. Emerson Cross*, for appellants.

*W. H. Abel* and *A. M. Abel*, for respondent.

CHADWICK, J.—Defendant had a contract to supply the
government with rock for the jetty at Grays Harbor. The
rock was transported on cars from the inland to a trestle
or spur running into the Chehalis river. From these cars,
it was loaded on scows, made fast alongside of the trestle.
The manner of unloading was to put the rock into a wooden
skip which was about twelve feet long and five feet wide. The
skip, when being filled, was made to rest on a parallel track.
It was raised by means of a derrick, the boom of which swung
in a circle. When the skip had been filled, it was raised, car-
ried over the car and returned to the scow. When empty, it
was raised, carried over the car and held until the head

[1]Reported in 145 Pac. 63.

"hooker on" indicated where he wanted it lowered, when one of the workmen, from a vantage point on the car, gave a signal to the engineer to drop the skip. The skip weighed something over a ton.

Plaintiffs' decedent went to the place where the work was being carried on, and asked the foreman in charge for employment. There being no place for him, he remained for some little time talking with the employees. At the time of the accident, to be presently mentioned, he was standing on the trestle on the off side of the car that was being unloaded. The engineer, on signal, raised the skip from the scow, swung it over the car, and in obedience to a like signal from one of the employees on the car, lowered it. It struck Kroeger on the forehead, knocked him down with such force that he was rendered unconscious and so wounded him that he afterwards died.

Plaintiffs brought this action, alleging that the defendant was guilty of negligence in the operation of the skip, and further, that while decedent was standing in a place of apparent safety and in ignorance of any danger, the defendant, knowing of his presence, carelessly, negligently, wantonly and wilfully permitted the skip to be suddenly dropped from its elevated position. It appeared that Kroeger had finished his errand and had no business or employment in or about the work at the time the accident occurred. He was waiting to go with some of the crew who were to go off shift in a few minutes.

At the close of plaintiffs' case, defendant moved for a nonsuit, which was granted by the court, for the reasons that it did not appear that the defendant was guilty of negligence and that decedent Kroeger was guilty of negligence on his part.

We think the judgment of the lower court was clearly right. Defendant owed Kroeger no duty other than to refrain from wilfully and wantonly injuring him. The occurrence was a pure accident. It is shown that Kroeger was

not within the range of vision of the engineer, and there is testimony from which it can be clearly inferred that the signal man undertook to arrest the lowering of the skip when he realized that he was in a place of danger. It does not appear that the engineer or signal man had any actual notice, or reason to believe, that Kroeger was in line with the fall of the skip, unless an inference can be drawn from the fact that he had been on the trestle from three to four minutes, as two of the witnesses estimated the time. This would not raise an inference of negligence, for as we have frequently held, negligence is not to be presumed but must be proved as a fact. If there had been a duty resting upon defendant to keep a lookout for intruders it would have been for the jury to say whether Kroeger had been on the trestle long enough to raise an implication of notice. There was no such duty. Obviously if his presence had been known to those operating the machinery, the accident would not have happened, for men in such employments are not to be charged with willful murder. The evidence affirmatively shows that Kroeger had remained in a position of apparent danger an inexcusable length of time, considering all of the attending circumstances; that he was taking no account of his own safety, and that he was looking down, with his hat "kinda pulled down over his eyes."

To allow a recovery in this case would be to put upon a defendant similarly situated the duty of maintaining an extraordinary degree of care, whereas, the rule is that a defendant owes no duty of actual care, while a duty of vigilance or the highest degree of care is put upon one who, for his own purposes, goes upon the premises of another and puts himself in a place of danger. 2 Cooley, Torts (3d ed.), p. 1268; 1 Thompson, Negligence, 946-948; 8 Thompson, Negligence (White's Supp.) 946.

The distinction between a trespasser and a licensee is clearly drawn in *McConkey v. Oregon R. & Nav. Co.*, 35 Wash. 55, 76 Pac. 526. Within the rule of that case, Kroeger was

a trespasser, and to sustain a recovery it was imcumbent
upon plaintiffs to show that defendant's agents knew of his
presence in time to avoid the injury. As we have said, proof
of this fact is entirely wanting. Other cases decided by this
court bearing in greater or less degree upon the question at
bar, are *Graves v. Washington Water Power Co.*, 44 Wash.
675, 87 Pac. 956, 11 L. R. A. (N. S.) 452; *Johnson v. Great
Northern R. Co.*, 49 Wash. 98, 94 Pac. 895; *West v. Shaw*,
61 Wash. 227, 112 Pac. 243. The case of *Metcalfe v. Cunard
S. S. Co.*, 147 Mass. 66, 16 N. E. 701, is in point. Plain-
tiff went on board a ship to consult the ship's doctor. He
met a supposed officer of the ship and, upon inquiry was di-
rected to the doctor's cabin. The way pointed out was a
direct way, although a more roundabout one would have
taken him there and would have avoided the danger. Near
the end of the passage way which he had followed, was an
uncovered hatch at which the vessel was loading. A com-
panion said, "Look at those fellows down there." Just as
the plaintiff emerged from the passage way he turned his
head and almost immediately was struck on the back and
knocked into the hold by a bag of flour which swung across
the deck on its way to be lowered into the hatch. It was held
that the plaintiff was, at the highest, a mere licensee, if not
a trespasser; that the danger was perfectly manifest and
that there had been no duty to warn the plaintiff against
such dangers. See, also, *Flanagan v. Atlantic Alcatraz
Asphalt Co.*, 37 App. Div. 476, 56 N. Y. Supp. 18; *Berlin
Mills Co. v. Croteau*, 88 Fed. 860; *Dixon v. Swift*, 98 Me.
207, 56 Atl. 761; *Weitzmann v. Barber Asphalt Co.*, 190
N. Y. 452, 83 N. E. 477, 123 Am. St. 560; *Severy v. Nick-
erson*, 120 Mass. 306, 21 Am. Rep. 514; *O'Brien v. Union
Freight R. Co.*, 209 Mass. 449, 95 N. E. 861, 36 L. R. A.
(N. S.) 492; *Larmore v. Crown Point Iron Co.*, 101 N. Y.
391, 4 N. E. 752, 54 Am. Rep. 718, where it is said:

"He went there on his own business, and in returning he
was subserving his own purposes only. The precise question

is whether a person who goes upon the land of another without invitation to secure employment from the owner of the land, is entitled to indemnity from such owner for an injury happening from the operation of a defective machine on the premises not obviously dangerous, which he passes in the course of his journey if he can show that the owner might have ascertained the defect by the exercise of reasonable care. We know of no case which goes to this extent. There is no negligence in a legal sense which can give a right of action, unless there is a violation of a legal duty to exercise care. The duty may exist as to some persons, and not as to others, depending upon peculiar relations and circumstances."

Paraphrasing the words of the court in *McConkey v. Oregon R. & Nav. Co., supra,* Kroeger, by the exercise of common judgment, should have known that to occupy the place he did would be attended by great hazard. He knew that he was not upon a highway for pedestrians but that the trestle was built and maintained and was being used for railway purposes. While he may have believed it was in such condition as would enable him to occupy it with safety, yet the environment, time, and his relation to the defendant were such as to give him no right to act upon such belief or to rely upon any duty owing by the defendant to maintain the place in safety for him.

We agree with the observation of the deceased, who said, upon recovering consciousness, that the accident occurred in consequence of his own fault.

The judgment is affirmed.

CROW, C. J., GOSE, MORRIS, and PARKER, JJ., concur.