[No. 18985.   Department One.   May 12, 1925.]

MIKE SHISH, *by his Guardian ad Litem John Kravchuk,
Appellant,* v. NORTHERN PACIFIC RAILWAY
COMPANY, *Respondent.*[1]

RAILROADS (53)—INJURY TO TRESPASSING CHILD ON CARS—NEGLI-
GENCE. It is not negligence for railroad trainmen to fail to detect
a young boy attempting to board or take hold of a moving train
near a street where boys were in the habit of playing.

TRIAL (76)—INSTRUCTIONS—BURDEN OF PROOF. An instruction
that, if the jury were uncertain, it would be a failure of proof and
their verdict must be for defendant, is not prejudicial, where in
the same instruction the jury were instructed that they must find
the particular matter referred to "by a fair preponderance of the
evidence" (MAIN, J., dissenting).

Appeal from a judgment of the superior court for
Grays Harbor county, Sheeks, J., entered October 30,
1923, upon the verdict of a jury rendered in favor of
the defendant, in an action in tort. Affirmed.

*G. F. Vanderveer* and *Everett C. Ellis,* for appellant.
*Geo. T. Reid* and *C. H. Winders,* for respondent.

PARKER, J.—The plaintiff, Mike Shish, a minor, by
his guardian *ad litem,* commenced this action in the su-
perior court for Grays Harbor county, seeking recov-
ery of damages for personal injuries suffered by him,
as it is claimed, by the negligent operation by the de-
fendant railway company of one of its trains in the
city of Hoquiam. A trial in that court, sitting with a
jury, resulted in a verdict and judgment rendered
thereon denying the plaintiff any recovery, from which
an appeal has been taken in his behalf to this court.

Reversal of the judgment and awarding of a new
trial to the plaintiff are sought solely upon claims of

[1]Reported in 235 Pac. 818.

error committed by the trial court in refusing to give
to the jury a certain requested instruction, and in giv-
ing to the jury certain instructions. The evidence,
without serious conflict, discloses what we regard as
the controlling facts touching these claims of error in
substance as follows: Polk street, in the city of Ho-
quiam, runs north and south. It is intersected at right
angles by Washington street, by Wheeler street 300
feet south of Washington street, and by Chenault
street 300 feet south of Wheeler street. Polk street
is 60 feet wide between property lines, has sidewalks
on both sides from six to eight feet wide, has a some-
what roughly graded roadway used but little by ve-
hicle travel, and running along its center line from
Washington to Chenault streets is a spur track of the
railway company, the top of the rails of which are
practically on a level with the surface of the roadway.
This spur track turns off of Polk street somewhat
abruptly to the west at Chenault street, and also turns
off of Polk street north of Washington street. We are
here concerned with the course of the track along the
two blocks from Washington street south to Chenault
street and its turn to the west at Chenault street. This
spur track was for a long time before, and has been
since the date of plaintiff's injury, used for serving
sawmills situated both north and south of the particu-
lar portion of it here noticed.

Along the two blocks mentioned and in that neigh-
borhood there is a number of dwellings. Near the cor-
ner of Wheeler and Polk streets there is a compara-
tively smooth tract of ground on which boys were in
the habit of playing marbles, more particularly when
school was not in session. While so playing, the boys
would often be within a few feet of the railway track.
Boys and others were in the habit of picking up bark
for fuel along the side of the railway track which had

fallen from the logging cars as they moved along the track, and also often taking loose bark off the cars, mostly while the cars were standing still. Occasionally, while the cars were slowly moving, boys would catch hold of, get upon them and ride; but whenever doing or attempting to do so and seen by any of the trainmen, they would be driven off by the trainmen and given to understand that they must not catch hold of or ride upon the cars. When a train had occasion to stop in this neighborhood, before starting, one or more of the trainmen would always go along the train to see that no person was on any of the cars or in a place of danger. The passing of cars over this portion of the track occurred seldom more than once each way a day, and that during the school hours of the forenoon, if school was in session; this manifestly because there was then less liklihood of children being in that neighborhood. A Mrs. Rafferty lived in a house on the west side of Polk street very near the middle of the block between Washington and Wheeler streets; the steps of her house coming down very close to, or directly upon, the sidewalk. Such are the general conditions having to do more or less with the solution of our problem.

At about 11 o'clock in the forenoon of the day in question, a train of nineteen cars, about two blocks long, was being moved south along this portion of the track. It was attended by five trainmen; an engineer, fireman, head switchman, who was in charge, and two other switchmen. It did not have any caboose at the rear, not being made up as a road train, but only for switching purposes in connection with the serving of the mills in the neighborhood. The engineer and fireman were at their usual stations. One switchman was on the front of the engine standing on the footboard looking ahead, as was his duty. The head switchman

in charge was on the right end of the rear footboard of the engine watching the west side of the train. The other switchman was apparently in the same relative position and performing the same duty on the other side of the train, though with that we are not concerned. As the train passed along these two blocks, none of the train crew saw anyone on or near the street save the plaintiff, sitting with another child of about the same age on the lower step of Mrs. Rafferty's house, or possibly on the sidewalk very near the step, and Mrs. Rafferty standing in the door of her house. No one else was on or near the street at that time, except possibly on the sidewalk another small boy somewhat older than the other two. The train was moving at about a speed of from three to five miles per hour, as seemed to have been the custom along there.

When the engine reached Chenault street and turned to the west, the trainmen who were all on the engine, as we have above noticed, lost sight of the rear of the train. It is apparent that, as the engine turned west at Chenault street, the rear end of the train was not quite past Mrs. Rafferty's house, probably three or four cars were yet to pass her house. Just about this time the plaintiff jumped up from where he was sitting and ran quickly to the moving train, a distance of from 25 to 28 feet, and caught hold of what was probably some portion of the second or third car from the rear. He lost his hold and fell down, but immediately recovered himself and caught hold of another portion of either that car or the next one, when he was thrown to the ground so that his foot was caught under a wheel of that car and practically severed just above the ankle. None of the trainmen saw the plaintiff run to the train, nor did any of them learn of him being injured until several hours later. The train passed on without stopping.

It is contended in behalf of the plaintiff that, under the circumstances here shown, the trial court erred to his prejudice in instructing the jury as follows:

"I instruct you that as a matter of law the defendants, while the train referred to in the evidence, was moving over and along Polk street, had the exclusive right to the use of the portion of the street so occupied by its train and cars while so moving, as far as the rights of the public attempting to use the track so occupied back of the engine pulling the cars is concerned, and that it is contrary to the laws of the state of Washington for any person, whether he be an adult or a child, to attempt to board such train while in motion.

"I further instruct you in this case that if you find that the plaintiff, after the head end of the train had gone by, ran or went to the railroad track over which these cars were being operated and attempted to grab ahold thereof while the same was in motion, he would in law be deemed to be a trespasser and neither of the defendants would be liable for the injuries he sustained, if no member of the train crew saw him.

"You are instructed that although you find from the evidence that children, to the knowledge of the railway company, had, prior to the plaintiff's injuries, attempted to and in fact had grabbed hold of or had climbed on moving cars as the same were being transported over and along Polk street, within the city of Hoquiam, yet such finding would not authorize or justify the minor plaintiff in boarding or catching on the side of the railroad cars being moved over this street at the time of this accident, and if in this case you find from the evidence that the minor plaintiff, at the time of the accident, attempted to get on or grab hold of one of defendant's cars at or just prior to his injury, and that the employees of the defendant railway company did not see him so attempting to get on or grab hold of such moving cars in time to warn him off or prevent the accident, then I instruct you, as a matter of law, that the plaintiff would not be entitled to recover in this case and your verdict would be for the defendants."

We note here that the trial court expressly instructed the jury that the plaintiff, by reason of his tender age, was incapable of negligence, and that the jury could not find against him in this case on the theory that he had been guilty of negligence contributing to his own injury; thus making it plain that the only question of negligence in the case was that of the negligence of the railway company. We are, therefore, to restrict our inquiry accordingly. It seems to us that our decision in *Delbosco v. Northern Pac. R. Co.*, 107 Wash. 216, 181 Pac. 683, is all but conclusive against the contention here made that the above quoted instructions were erroneous to the prejudice of the plaintiff. In that case there was drawn in question the duty of the railway company to a nine-year old boy getting on a standing train without the knowledge of any of the trainmen, and upon the train starting, the jerk threw him off, causing the injury for which he sued the railway company. The general presence of boys about and upon the cars of the railway company at or near that particular place was not materially different from the situation here in question, in so far as the general presence of children is concerned. That case, however, involved a boy getting on a standing train, while here it is a matter of the plaintiff suddenly running to and attempting to take hold of and get on a moving train. It seems plain that there would be less reason for trainmen anticipating children attempting to take hold of and get on a moving train than anticipating that children would take hold of or get on a standing train. In other words, there is less reason for so guarding a moving train than for so guarding a standing train and seeing that no one is on it or in a place of danger about it before starting it. Referring to the duty of the railway company in that case, we said:

"There is considerable evidence in the record as to the trespassing of children on the company's tracks. It will be conceded that the gist of this evidence is that it was well known to the authorities of the city of Cle Elum and of the railroad company, and that efforts were made from time to time, by way of warning and some arrests, to deter this form of trespassing. The appellant contends that this situation presented a question as to how much the duty of a railroad crew towards trespassing children was qualified by such situation, arguing that it placed upon the crews the burden of determining, before starting their trains, whether or not any children were boarding them or had boarded them. There is no testimony that the crew saw the boy, the obligation sought to be enjoined upon the respondent being that its crew should have seen him. In other words, there was no wanton injury. The company was not obliged to employ men to keep boys from trying to ride on the cars."

Observations made in our decisions in *Oregon R. & Nav. Co. v. Egley,* 2 Wash. 409, 26 Pac. 973, 26 Am. St. 860; *Matson v. Port Townsend Southern R. Co.,* 9 Wash. 449, 37 Pac. 705; *Clark v. Northern Pacific R. Co.,* 29 Wash. 139, 69 Pac. 636, 59 L. R. A. 508, and *Johnson v. Great Northern R. Co.,* 49 Wash. 98, 94 Pac. 895, are in harmony with and lend strong support to this view of the law, viewed wholly apart from the question of contributory negligence upon the part of one of tender years so becoming injured. *Barney v. Hannibal & St. Joseph R. Co.,* 26 L. R. A. 847, and *Catlett v. St. Louis, I. M. & S. R. Co.,* 57 Ark. 461, 21 S. W. 1062, 38 Am. St. 254, are also well considered cases supporting this view of the law. In the latter the court said:

"The youth of the person injured will sometimes excuse him from concurring negligence, but no amount of youthful recklessness can supply the place of proof of negligence on the part of a defendant sought to be charged on account of negligence."

It is argued that, because of the tender years of the plaintiff, it was not unlawful for him to attempt to take hold of and get on the moving train. It may be conceded that the act was not unlawful on the part of the plaintiff in the sense that he could be punished criminally therefor, or in the sense that he could thereby be charged with contributory negligence. With the former we are not concerned, and, as we have seen, the court excluded from the consideration of the jury any thought that the plaintiff's contributory negligence could weigh in the least against his right of recovery. We are to consider the manner of the plaintiff's attempt to get on the train only as affecting the question of the railway company's negligence. So viewed, we see no escape from the conclusion that in that sense the plaintiff's attempt to get on the train was unlawful and not a thing that the trainmen were required to anticipate the plaintiff would do, though had the trainmen been aware of such attempt on the part of the plaintiff in time to have prevented his injury, of course the duty would have devolved upon them as servants of the railway company to have put forth efforts to prevent his injury. What we have already said and the authorities above noticed, we think, render it plain that the railway company was not obliged to have employees upon the ground alongside of the moving train to prevent children from doing what plaintiff did so suddenly, and we think it equally plain that had one of the railway company's trainmen been upon the rear of the train and seen this sudden effort on the part of the plaintiff at its very beginning, he could not possibly have prevented the injury. He could not have reached the plaintiff in time, and manifestly the train could not have been stopped in time to have prevented it. We think it must be held to have been conclusively shown that the

presence of any of the railway company's trainmen on the rear of the train could not have, under any circumstances, prevented the injury to the plaintiff. So that whatever there may be in the contention that the company was negligent in not having one of its trainmen on the rear of the train, such negligence was not the proximate cause of the plaintiff being injured.

At the conclusion of one of the given instructions, the court said:

"If you are uncertain on this question it would be a case, under the law, of a failure of proof and your verdict would be for the defendants."

This is claimed to have been erroneous and prejudicial to the plaintiff because of the expression, "if you are uncertain;" it being argued that that is a wrong measure of burden of proof. It may not have been a very happy expression, but we think it was in no event prejudicially erroneous. In the beginning of that instruction the court advised the jury that they must find with reference to the particular matter referred to in that instruction "by a fair preponderance of the evidence." Besides, elsewhere in the instructions this thought was repeatedly expressed in substance, so that the jury could not have been misled as to their duty to decide all questions of fact according to the preponderance of the evidence relating thereto. The court took special pains to correctly define "preponderance of evidence."

The refusal of the court to give one requested instruction is also claimed as erroneous. This requested instruction was long and somewhat involved and argumentative. It related in very general language to reasonable precautions which ought to be taken by the railway company to avoid danger to people coming upon and near its cars and tracks. This subject, we are satisfied, was well and correctly covered by in-

structions which were given by the court in its own language.

Mr. Ryan, the head switchman in charge, was made a defendant with the railway company. He, of course, is also absolved from liability by the verdict and judgment.

The judgment is affirmed.

TOLMAN, C. J., BRIDGES, and ASKREN, JJ., concur.

MAIN, J. (dissenting)—I am unable to agree with the majority opinion in this case upon one point. In my opinion, it was prejudicial error to instruct the jury upon the vital issue in the case that if they were uncertain on this question it would be a failure of proof under the law and their verdict should be for that reason for the defendant. The sentence quoted in the majority opinion is at the conclusion of an instruction which, as stated, covered the important issue in the case. It does not give to the jury a correct measure of the burden of proof. No authority is cited in its support, and I doubt if any can be found. The appellant was entitled to have the issue submitted to the jury by an instruction which was a reasonably correct statement of the law. The instruction was not only erroneous but prejudicial. I therefore dissent.