(37 App. Div. 476.)

FLANAGAN v. ATLANTIC ALCATRAZ ASPHALT CO.

(Supreme Court, Appellate Division, First Department. February 10, 1899.)

1. NEGLIGENCE—TRESPASSERS.
    A person employed to haul away asphalt from a yard left his team standing inside the fence and went to another part of the yard, where his employment did not take him, and for a purpose foreign to it, and was hurt by a falling gate. *Held*, that the owner of the yard owed him no duty to keep the gate secure.

2. CONTRIBUTORY NEGLIGENCE—ISSUE.
    Where a teamster left his team, and without the owner's invitation, for a purpose of his own, went to another part of the premises, to which his employment did not take him, and was there hurt by the unexplained falling of a gate, which might have been caused by teams going in and out, there was an issue of contributory negligence for the jury.

3. NEGLIGENCE—DUTY OF OWNER OF PREMISES.
    The owner of premises is bound to use those appliances which, under the circumstances, would appear to a reasonably prudent man to be proper to keep the premises in a safe and suitable condition, free from danger to those rightfully using them.
    O'Brien, J., dissenting.

Appeal from trial term, New York county.

Action by Thomas F. Flanagan against the Atlantic Alcatraz Asphalt Company, substituted for the California Asphalt Company. There was a judgment for plaintiff, and defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Perry D. Trafford, for appellant.
G. Washbourne Smith, for respondent.

INGRAHAM, J. The defendant maintains a yard on the north side of Fifty-Sixth street, between Eleventh and Twelfth avenues, for the storage of asphalt in the prosecution of its business. This yard is inclosed by a fence, in which there are gates, suspended by overhead wheels upon a piece of timber, and opened by being pushed back against the fence, so that when a gate is opened it is suspended

from the timber overhead, and hangs upon the wheels. The defendant had made a contract with one Mooney to cart asphalt from its yard. The plaintiff was in the employ of Mooney, and on the afternoon of September 3, 1896, he was just inside of one of the gates, waiting to load his cart with asphalt. There were other horses and trucks ahead of him in the yard waiting for a load. The plaintiff left his truck standing in line, and went up near this gate to relieve himself, and as he stood near this gate it fell upon him, causing the injury to recover for which this action is brought. There is evidence that the drivers of these carts were in the habit of going to the fence about the defendant's premises for this purpose, but no evidence that the defendant had knowledge of this habit of the men. There was evidence that, before the plaintiff was injured, the gate had come off the rollers and had several times fallen. One witness testified that in opening the gate, it would run off the rollers, and others testified that they had seen the gate off the rods upon which the wheels ran. The gates were closed at night, and were opened in the morning by the first truckman that got there. At the time of the accident this gate was open to its full extent, so that the side of the gate was close to the post which supported the fence at the edge of the opening, and apparently had been open since the early morning. The accident happened between half past 12 and 1 o'clock. On behalf of the defendant there was evidence tending to show that on the January previous new hangers had been put on the gate, and the gate was made secure. One of the witnesses for the defendant noticed, immediately after the accident, that there was an indentation on the side of the gate which was not there immediately before, and that after the accident he saw that one of the hangers supporting the gate was broken off and the other twisted. There was no other evidence to show what occasioned the fall of the gate. Other drivers of trucks and carts testified that they saw nothing hit the gate before it fell. From the evidence it would seem that there was difficulty in opening the gate, and that when it was opened it would sometimes come off the rollers and fall down; but there does not seem to have been any evidence to show that the gate ever fell after it was opened, or if it were not touched. The court, at the request of the plaintiff, submitted the question of the defendant's negligence to the jury, and charged the jury that "if the jury find that the gate was in a defective condition, and the defendant knew, or in the exercise of ordinary care should have known, of its defective condition, it was the duty of the defendant to have repaired the gate, so that it would be in a reasonably safe condition, and failure on its part to do so would be negligence; and if the plaintiff received his injury through the negligence of the defendant, your verdict must be in his favor"; and that "there is no evidence in the case to show that the plaintiff was guilty of contributory negligence." To these instructions the defendant excepted.

We have the case of a person upon the premises of another, voluntarily and for his own purpose leaving a place of safety and going to another place. There was nothing that required him to select this particular position near the gate; nor is there anything to show that

the defendant anticipated that the workmen employed upon the carts would place themselves in such a position as to require it to guard against the gate's falling. When in that position, the plaintiff was injured by an unexplained accident, for which the plaintiff's testimony gives no cause. The first question presented is whether the defendant owed any duty to the plaintiff to keep this gate when open in such a condition that it could not fall, so that a neglect to perform such duty would give the plaintiff a cause of action against the defendant. In the first place, there was no contractual relation between the plaintiff and the defendant. The plaintiff was not in the employ of the defendant, and the obligations which are imposed upon an employer to furnish to his employé a safe and proper place to work are not applicable. Undoubtedly, the defendant, having made a contract with the plaintiff's employer to do certain work which required the plaintiff to go upon the premises, was bound to exercise care so that the plaintiff, while upon the premises in discharge of the work which he was employed to do, would not be injured, and a failure to exercise such care would be negligence for which the defendant would be responsible. This duty to the plaintiff, however, only existed as to the premises to which the plaintiff was required to go in the performance of the contract between the defendant and the plaintiff's employer. The plaintiff was not bound to anticipate that these workmen would leave their carts and go to a part of the yard to which they were not required to go in carrying out the contract between the defendant and the plaintiff's employer, or that the plaintiff would use this gate or fence for the purpose which he did. So long as the plaintiff remained upon his cart, or was engaged in the performance of the work which he was employed to do, he was perfectly safe; and, assuming that this gate was defective and liable to fall without any apparent cause, there was nothing to justify an inference by the defendant that any of these workmen would place themselves under it in a position to be injured if it fell. We are considering a duty that this defendant owed to the plaintiff. It is certain that no work that the plaintiff was called upon to do required him to use this part of the yard, and there was no invitation of the defendant to the plaintiff, express or implied, to use this gate or fence for the purpose for which he did use it. It is said that the defendant provided no water closet for the men; but it was under no obligation to do so, and its failure to furnish such convenience was certainly no invitation to the workmen to use any portion of the premises that they saw fit for such purpose. It is difficult to see, therefore, what duty the defendant owed to the plaintiff in connection with this private purpose. The plaintiff was not there engaged in the performance of any work which he was employed to do, but he went there to use the defendant's premises for a purpose for which it was not intended, and without the defendant's permission. The case of Sterger v. Van Sicklen, 132 N. Y. 499, 30 N. E. 987, would seem to be decisive of this question. In that case the plaintiff, while descending a stairway leading from the rear of a house to the ground, in consequence of the breaking of a step, was injured. The premises were owned by the defendant, but occupied by a tenant. The plaintiff occupied the

adjoining house. The premises were separated in the rear by a fence, through which an opening had been made. The defendant knew that the steps were out of repair, and promised to repair them. It was held that the defendant was not liable, the court saying:

"It may be observed, in passing, that the owner may ordinarily exercise such dominion over and make such use of his real estate as he chooses, provided the rights of others are not thereby violated. No right of the plaintiff was violated. The enjoyment of the premises occupied by her was not interfered with. Had she remained on them the injury would not have occurred. But she chose to go on private property, and up or down back steps, over which she had no authority, and as to which she had acquired no such interest, by contract or otherwise, as would have entitled her to demand as a right that the so-called nuisance be abated. As to her it was not a nuisance, because it did not invade either her property or personal rights. * * * It is urged that a recovery can be supported because the defendant negligently permitted the stairs to remain in an unsafe condition. The question is, therefore, presented: Did the defendant's duty require the exercise of any care to protect the plaintiff while on the premises?"

It was held that it did not; and the court quotes with approval Severy v. Nickerson, 120 Mass. 306, where a laborer employed in loading ice on a vessel from the wharf, after finishing his work, went on board the vessel for the gratification of his curiosity, and there fell down an open hatchway, and broke his leg. Devens, J., speaking for the court, said:

"The distinction which exists between the obligation which is due by the owners of premises to a mere licensee, who enters thereon without any enticement or inducement, and to one who enters upon lawful business, by the invitation, either expressed or implied, of the proprietor, is well settled. The former enters at his own risk; the latter has a right to believe that, taking reasonable care of himself, all reasonable care has been used by the owner to protect him in order that no injury may occur."

Here the plaintiff entered these premises upon lawful business by the invitation of the defendant. He had a right to believe that all reasonable care had been used by the owner to protect him upon the portion of the premises where his work required him to go, but when he left the portion of the premises upon which he was invited, and went over to this gate for reasons of his own, he went there at his own risk, and in that position he was not entitled to assume that the defendant would use all reasonable care to protect him. The same principle is applied in the case of Larmore v. Iron Co., 101 N. Y. 391, 4 N. E. 752. We think, also, it was error for the court to charge the jury that there was no evidence in the case to show that the plaintiff was guilty of contributory negligence. The plaintiff left a place of safety, and deliberately placed himself in the position in which he was injured, without invitation from the defendant. Viewing this act in its relation to the question of the negligence of the plaintiff, we think it should have been submitted to the jury. Considering the method by which the gate was hung, the position in which the plaintiff placed himself, the fact that horses and carts were standing in the gateway with a possibility of collisions happening between the side of the gate and the carts or trucks going in and out, and the fact that other places were available to the plaintiff in the neighborhood for the accomplishment of his purpose

without placing himself alongside the gate in the immediate vicinity of these horses and trucks, we think the question of plaintiff's negligence was for the jury.

"We are not permitted to guess or assume that the deceased was free from fault because he was injured, or that every person will take care of himself from regard to his own life and safety, for the reason that human experience shows that persons exposed to danger will frequently forego ordinary precautions of safety. It is incumbent upon the plaintiff to show, by a preponderance of evidence, such facts and circumstances as will satisfy the minds of the jurors that the deceased exercised proper care and prudence, and did not omit the precautions of a prudent man under the circumstances. The law demands proof, and not mere surmises." Riordan v. Steamship Co., 124 N. Y. 655, 26 N. E. 1027.

We also think that the court erred in charging the plaintiff's third request, that the defendant "was in duty bound to the plaintiff to use such safeguards in securing the gate as experience has shown to be safe." We do not understand that such a duty was imposed upon the defendant. The defendant was not confined to those appliances which experience has shown to be absolutely safe, but to those appliances which, under the circumstances, would appear to a reasonably prudent man to be a proper appliance to keep the premises in a safe and suitable condition, free from danger from those rightfully using them. To prohibit a person from using any appliances other than those that experience has shown to be absolutely safe would prevent any one in possession of the premises from applying any device or apparatus which had not been used before, the absolute safety of which had not been demonstrated. We do not think that this is a correct statement of the obligation. It follows that the judgment must be reversed, and a new trial ordered, with costs to the appellant to abide the event.

All concur except O'BRIEN, J., who dissents.