SAMUEL DUTTON, Respondent, *v.* THE GREENWOOD CEMETERY COMPANY, Appellant.

*Negligence — injury from the fall of a monument in a cemetery — duty of the cemetery association to inspect the monuments.*

In an action brought against a cemetery corporation to recover damages for the loss of the services of the plaintiff's minor child, it appeared that the plaintiff, with his wife and three children, visited the cemetery for the purpose of decorating the grave of a buried child; that the child was buried in a public lot which contained about 500 graves and about 100 tombstones, and that persons having occasion to visit this portion of the grounds were accustomed, as the only means of access to the graves, to walk between the grave mounds. On the day of the accident the plaintiff and his family reached the grave of the buried child by walking along a well-defined pathway which had been made by people tramping down the sod between the grave mounds. While the party were retracing their steps a tombstone fell upon the plaintiff's child, two years and eight months old, and broke her leg.

The child did not touch the stone, but it was possible that her attire might have brushed it. The tombstone in question had been set more than a dozen years, and had originally been set improperly. In addition to this, it appeared that the stone had gradually shifted from the base, so that it was ready to fall at

the merest touch at the time of the accident. This condition would have been discoverable upon an ordinary inspection, but such an inspection was never made.

The cemetery corporation did not convey any portion of the cemetery land by deed, but simply issued interment permits. It instructed its foreman, among other things, to maintain the gravestones in good order, to keep them straight in line and to straighten them when, as occasionally happened, they were found leaning from the effects of a storm or some other cause. There was, however, no regular inspection of the monuments, either when they were originally set up or afterwards, for the purpose of ascertaining whether they were in safe condition, although accidents like the one in question were not uncommon.

*Held*, that, as the cemetery corporation owned the property, and lawfully assumed to supervise and control its care and maintenance, including the keeping of the monuments and tombstones in safe and proper condition, it was amenable to the general rule of liability for negligence;

That negligence on the part of the cemetery corporation was fairly established from the condition of the tombstone on the day it fell, and also from the length of time which had elapsed since the stone was improperly placed in the first instance.

JENKS, J., dissented.

APPEAL by the defendant, The Greenwood Cemetery Company, from a judgment of the Municipal Court of the city of New York, in favor of the plaintiff, entered on the 6th day of November, 1902, after a trial without a jury.

*Edmund L. Baylies* [*Langdon P. Marvin* with him on the brief], for the appellant.

*Charles C. Clark*, for the respondent.

HIRSCHBERG, J.:

The plaintiff has recovered a small judgment for the loss of the services of his minor child, who was injured by reason of the falling of a tombstone upon her in defendant's cemetery. The plaintiff with his wife and three children were visiting the cemetery on the day of the accident, May 30, 1899, the plaintiff's purpose being to decorate the grave of a buried child. The children were then seven years, two years and eight months, and three months old respectively. The plaintiff's plot and the one from which the

tombstone fell are side by side, and both are in a large "public lot," as it is called by the defendant. In this particular public lot there are more than 500 graves and about 100 tombstones. Persons having occasion to visit this portion of the grounds are accustomed to walk between the graves as the only means of access to their own plats or subdivisions. No title to the property is conferred by the defendant by deed, but a privilege of interment only is given, evidenced by a receipt or interment ca, d.

On the day in question the plaintiff and his family reached the grave by walking upon what is referred to as a well-defined, beaten pathway, made by use, and extending from Orchard avenue to and beyond the place of the accident. Its width is stated at from twelve to twenty-one inches. It is merely the sod between the grave mounds tramped into a pathway. After the plaintiff had planted flowers and weeded and cleared up the grave, picking up bits of paper, etc., to carry and throw away, the party started to retrace their steps. The girl who was injured was the two years and eight months old child, and she was walking just ahead of her mother, the latter carrying the baby, and as the little girl was passing between the graves the tombstone fell upon her, breaking her leg.

It cannot be doubted that the defendant owes some duty of care to those who are lawfully on the premises to see to it that they are reasonably safe in so far as ordinary diligence will accomplish that result. The learned counsel for the defendant conceded on the trial that if any liability existed it attached to the defendant, but he insisted that express knowledge of the dangerous condition must first be acquired before the defendant can be held to be under any obligation to act. There is, however, nothing in the situation to remove the case from the operation of the general rules governing constructive notice. The defendant is the absolute owner of the property and in full possession and control of it, those to whom receipts for lots have been given having no estate or interest in the land as such, but merely a right to its use for burial purposes, subject to the rules, regulations and general control of the defendant. (*People ex rel. Coppers* v. *Trustees,* 21 Hun, 184; *Went* v. *Methodist Protestant Church,* 80 id. 266; *Buffalo City Cemetery* v. *City of Buffalo,* 46 N. Y. 503.) Even where a deed had been given to a lot owner in the case last cited, Judge FOLGER said (p.

505): "The effect of such conveyance, under the statute from which the plaintiff derives its powers, is we suppose (for no copy of any conveyance is laid before us), no more than to confer upon the holder of a lot a right to use for the purpose of interments. No such estate is granted as makes him an owner in such sense as to exclude the general proprietorship of the association. The association remains the owner in general, and holds that relation to the public and to the government, while, subject to this, the individual has a right exclusive of any other person to bury upon the subdivided plat assigned to him. He holds a position analogous to that of a pew-holder in a house for public worship. It is a right exclusive of any other of the congregation, but subject to the right of the religious corporation, which represents the ownership of the property to the public, and is the legal owner of the fee of the property."

The defendant has apparently always assumed the duty of exercising the care incident to ownership. Its foreman testified that in the locality in question his instructions from the defendant were to cut the grass, keep the paths, mounds and gravestones in good order, to keep the latter straight in line, and to straighten them when, as occasionally happens, they are found leaning from the effects of storms or otherwise. There was, however, no regular inspection of the monuments, either when they were originally set up or afterwards, for the purpose of ascertaining whether they were in safe condition, although accidents similar to this one were not uncommon. The foreman testified on direct and on cross-examination on the subject of his instructions as follows: "Q. What orders have you about keeping headstones on public lots in order? A. Try to keep them straight in a line, just keep them lined up. Sometimes they might be leaning a little back, if there is a storm; I try to keep them upright and straight — straight in a line, that is all. * * * Q. You say your instructions are to see that these base stones are in line and up in order? A. Yes. We see they may not fall as stones do sometimes. Q. That is to keep them from falling on people that pass by and on children? A. Yes."

The stone which fell in this case had been set more than a dozen years and apparently improperly. There were holes in the base and corresponding holes in the headstone for the purpose of inserting metallic dowels to keep the latter in place, but no dowels had been

placed in the holes. The base was beveled from the point of contact with the headstone, and the stone must have gradually shifted so that it was ready to fall at the merest touch at the time of the accident. The evidence given by the plaintiff's wife was to the effect that the little girl was not playing at the time and did not touch the stone unless her attire may have brushed it as she was passing, while the defendant proved that had the stone been set in its proper place upon the base, even without dowels, its weight would have kept it firmly so that it could only be dislodged by the application of considerable force beyond the 'power of the child.

The defendant owning the property and lawfully assuming to supervise and control its care and maintenance, including the keeping of the monuments and tombstones in this portion of the grounds in safe and proper condition, the application to it of the general rule of liability for negligence necessarily follows. (*Donnelly* v. *Boston Catholic Cemetery*, 146 Mass. 163.) The rule is fairly stated by Mr. Justice WILLARD BARTLETT in *George* v. *Cypress Hills Cemetery* (32 App. Div. 281, 282) as follows : " Having regard to the control which the law gave to the corporation, and which it actually exerted within the limits of the cemetery, I think its officers and agents were bound to exercise reasonable care not to permit the introduction into the lots, or upon or about the graves, of anything which they knew or ought to have known would constitute an unusual source of danger to persons lawfully visiting such lots or graves." Cooley, in his work on Torts, at page 605, states that when one " expressly or by implication invites others to come upon his premises, whether for business or for any other purpose, it is his duty to be reasonably sure that he is not inviting them into danger, and to that end he must exercise ordinary care and prudence to render the premises reasonably safe for the visit." (See, also, *Larkin* v. *O'Neill*, 119 N. Y. 221 ; *Hart* v. *Grennell*, 122 id. 371 ; *Ford* v. *L. S. & M. S. R. Co.*, 124 id. 493 ; *Flynn* v. *Central R. R. Co.*, 142 id. 439, 445.)

It is obvious from what has been said that there is no element of contributory negligence in the proof, and that the defendant's negligence is fairly established from the condition of the tombstone on the day it fell, and which must have been discoverable upon ordi-

nary inspection, but which inspection was never made ; and also from the length of time which had elapsed since the stone was improperly placed in the first instance.

The judgment must be affirmed.

BARTLETT, WOODWARD and HOOKER, JJ., concurred; JENKS, J., dissented.

Judgment of the Municipal Court affirmed, with costs.