## Mount Greenwood Cemetery Association v. Tillie Hildebrand.

### Gen. No. 12,469.

1. CEMETERY LOT—*right of way acquired by owner of.* The owner of a cemetery lot aquires the right to pass back and forth through the cemetery grounds over the constructed walks or avenues, if there be such, leading from the gate of the cemetery to his lot.

2. CEMETERY ASSOCIATION—*when not guilty of negligence.* The owner of a lot in a cemetery has no implied license to roam at will through all of the cemetery grounds, nor is a cemetery association charged in law with the duty of maintaining all of its grounds in a reasonably safe condition for persons thus roaming through them, and such an association is not guilty of actionable negligence where one, through the owner, enters upon the cemetery grounds and is injured while walking upon a portion of such grounds other than the roads and pathways expressly provided by the association as the means of reaching the lot to which such person had a right of way.

Action on the case for personal injuries. Appeal from the Superior Court of Cook County; the Hon. ARTHUR H. CHETLAIN, Judge, presiding. Heard in this court at the October term, 1905. Reversed. Opinion filed May 7, 1906.

BORMAN & McGRATH, for appellant.

PINCKNEY, TATGE & ABBOTT and THOMAS A. LEACH, for appellee.

MR. PRESIDING JUSTICE ADAMS delivered the opinion of the court.

The appellee was plaintiff and the appellant defendant in the trial court, and the former recovered judgment against the latter for the sum of $1,500, from which this appeal is

The declaration contains two counts. In the first count it is averred, in substance, that the defendant, July 12, 1901, was possessed of and occupied Greenwood Cemetery, in which there was a large hole of great depth opening into a sewer, and wrongfully, carelessly and negligently permitted the said hole to be and continue so insufficiently and defectively covered that plaintiff, who was then and there lawfully on said premises, and using due care for her own safety, necessarily and unavoidably slipped and fell into said hole, by means whereof she was injured, etc. The second count is substantially the same as the first, except that it avers defendant's knowledge of the hole, and that the plaintiff was on the premises "by leave and license of the defendant." The defendant pleaded the general issue. The defendant, at the close of the plaintiff's evidence, and also at the close of all the evidence, made proper motions, accompanied with proper instructions, to instruct the jury to find the defendant not guilty, which motions the court overruled. The jury found the defendant guilty and assessed the damages at the sum of $1,500, and the court, after overruling motions for a new trial and in arrest of judgment, rendered judgment on the verdict.

The evidence tends to prove the following facts: The defendant owns the cemetery. There is an iron gate which is used as a means of ingress to and egress from the cemetery, which is kept open from seven o'clock in the morning till five or 5:30 in the evening every day, for the purpose of permitting the owners of lots in the cemetery to visit their lots, and prospective purchasers of lots to inspect the premises. The plaintiff is a married woman, and her father owns a lot in the cemetery. She entered the cemetery about two o'clock in the afternoon of July 12, 1901, accompanied by her two sisters and her two children. Her purpose in going to the cemetery was to decorate graves in her father's lot, by her father's direction. After this decoration had been attended to, she and her companions went through the cemetery to visit the graves of some deceased friends, which done, they started back to the lot of

plaintiff's father through the grounds, to get another path and make a short cut to her father's lot. The plaintiff, while walking south on the cemetery ground parallel with a smooth macadamized walk eighteen feet wide, and about three feet from the walk, stepped into an uncovered pipe six inches in diameter. The upper end of the pipe was about even with the surface of the ground, and gave access to a running trap, for the purpose of cleaning out any slush which might accumulate in the trap. The grass was high and prevented the plaintiff from seeing the pipe. There was a safe and convenient walk by which plaintiff could have reached her father's lot, to which she was returning, but she chose to make a short cut to the lot across the grounds. Prior to July 12, 1901, when the accident occurred, the pipe was covered by a circular cover of pine wood more than an inch in thickness, which was fitted "snugly" to the pipe. The evidence is that this cover was placed in the pipe about three years before the accident. There is no evidence as to when, before the accident, or by whom it was removed.

When plaintiff's father purchased his lot he thereby acquired the right of way to the lot, and if there was a constructed walk or avenue leading to his lot from the gate of the cemetery, such way was a servitude in favor of the lot. Burke v. Wall, 29 La. Ann. 38. But if there was such prepared way, he did not acquire, by the purchase of the lot, any right of way to the lot over the grounds of the cemetery used or intended for burial purposes. Manifestly, the plaintiff who, as she testified, visited the cemetery by direction of her father, for the purpose of decorating her sister's grave in his lot, had no greater right than her father. In returning from the grave of her deceased friend to her father's lot she might have done so by a safe and convenient walk, without encroaching on any part of the cemetery ground intended for burials, but she chose, solely for her own convenience, to cross the grounds thus, as she says, making a short cut to her father's lot. It is for the convenience of the owners of lots in a cemetery and to

their interest, that the proprietors of the cemetery shall construct safe and convenient avenues and ways for access to the burial lots, and when this is done every lot owner has an implied license to use such means of access, but has no license to roam over the grounds for his own pleasure or convenience, and if one so does, it is at his own risk, and if he suffers injury in so doing, the proprietors of the cemetery are not liable. The grounds of the cemetery, outside of the avenues or ways provided for access to lots, are not intended for walking in, but solely for burial purposes. Suppose that the plaintiff, in walking in the grounds through the high grass, had struck her foot against a high stone and been thrown down and injured, there being a safe way which she might have taken, would the defendant be liable? Clearly not, as we think. Yet, in principle, there would be no difference between injury by reason of the stone and injury by reason of the uncovered pipe.

Plaintiff's case rests on the proposition that there was an implied license to lot owners to roam at will all over the cemetery grounds, and, therefore, the defendant's duty was to maintain all the grounds in a reasonably safe condition for persons thus roaming over them. We cannot accede to this view. Barry v. Cemetery Association, 106 Mo. App. 358, is directly in point. In that case a lot owner left the traveled way, which the association had provided for access to lots, and in going across the grounds stepped into a hole and was injured. The court held there could be no recovery, and reversed the judgment recovered by the plaintiff in the trial court. As previously stated, it was proved, and not contradicted, that the pipe was covered prior to July 12, 1901, and there is no evidence as to when or by whom the cover was removed. It might have been, for aught the evidence shows, on the morning of July 12, 1901, or so short a time prior to the accident that the defendant, in the exercise of ordinary diligence, could not have discovered it. In the case of a municipality which has supervision and control of the streets within its limits, and is bound to maintain them in a reasonably safe condition, it is incum-

bent on a plaintiff, suing the municipality for injuries alleged to have been caused by a defect in the street, to prove either that the municipality knew of the defect, or that the defect had existed for such a length of time that, in the exercise of ordinary care, it should have known of it.

Being of opinion that there can be no recovery on the facts, the judgment will be reversed.

*Reversed.*