### RIGGS v. NEW YORK TUNNEL CO.

(Supreme Court, Appellate Division, Second Department. November 24, 1909.)

1. EXPLOSIVES (§ 12*)—INJURIES FROM BLASTING—CONTRIBUTORY NEGLIGENCE —QUESTION FOR JURY.

In an action against a contractor, constructing a subway, for the death of a city inspector by a delayed explosion of dynamite in blasting, where the evidence showed that defendant's workmen had been ordered back to work after the explosion of a blast, whether decedent was in the exercise of reasonable care for his safety in returning to his duties with the workmen, while the place was dark and filled with smoke, was a question for the jury.

[Ed. Note.—For other cases, see Explosives, Cent. Dig. §§ 9, 10; Dec. Dig. § 12.*]

2. EXPLOSIVES (§ 12*) — INJURIES FROM BLASTING — PRESUMPTIONS FROM ACCIDENT.

Such facts did not present a case for the application of the doctrine of res ipsa loquitur.

[Ed. Note.—For other cases, see Explosives, Cent. Dig. §§ 9, 10; Dec. Dig. § 12.*]

3. EXPLOSIVES (§ 12*)—INJURIES FROM BLASTING—EVIDENCE OF NEGLIGENCE.

As blasting cartridges generally explode when properly placed and connected with the electric current, the fact that one or more of them explode some minutes after others indicates some defect in the cartridges or in the electrical connection, and, unexplained, justify a finding that

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the person doing the blasting was guilty of negligence, constituting the proximate cause of the injury resulting from the delayed explosion.

[Ed. Note.—For other cases, see Explosives, Cent. Dig. §§ 9, 10; Dec. Dig. § 12.*]

4. EXPLOSIVES (§ 12*)—BLASTING—DUTY TO USE CARE.

The contractor owed such inspector the duty of not misleading him into danger from a delayed explosion of a blast, by directing the workmen to return to their work after a previous explosion.

[Ed. Note.—For other cases, see Explosives, Cent. Dig. §§ 9, 10; Dec. Dig. § 12.*]

5. EXPLOSIVES (§ 12*)—BLASTING—CONTRIBUTORY NEGLIGENCE—ASSUMPTION OF RISK.

Such inspector did not assume the risk of defendant's negligence.

[Ed. Note.—For other cases, see Explosives, Cent. Dig. §§ 9, 10; Dec. Dig. § 12.*]

Jenks, J., dissenting.

Appeal from Trial Term, Kings County.

Action by Mary Hatch Riggs, as administratrix, against the New York Tunnel Company. From a judgment for plaintiff, and an order denying a new trial, defendant appeals. Affirmed.

Argued before HIRSCHBERG, P. J., and WOODWARD, JENKS, RICH, and MILLER, JJ.

Franklin Nevius (Abram J. Rose and John S. Keith, on the brief), for appellant.

Don R. Almy, for respondent.

WOODWARD, J. The plaintiff has entered a judgment in an action for negligence on the verdict of a jury, and the defendant appeals from such judgment, and from an order denying defendant's motion for a new trial.

The defendant was a subcontractor for the construction of the subways under the East River, and at the time of the accident, resulting in the death of plaintiff's intestate, was engaged in excavating the tunnel through the rock bed of the river. The work was being done by "shifts" of workmen operating night and day, and the plaintiff's intestate was an inspector appointed by the Board of Rapid Transit Commissioners to ascertain and report to his superiors at the end of each shift the progress of the work, and to measure the amount of the excavation. The excavating was done by drilling holes in the rock and blasting out the same, one-half of the heading at a time, above and below alternately. On the afternoon of the 30th of September, 1906, certain holes had been drilled in the heading. These holes were about 10 feet deep, in the lower half of the face, in two rows 6 feet apart, five holes in a row, converging until they almost met at their ends. These were termed "cut holes." On either side of these two rows was a row of holes known as "rib holes," or "helpers," parallel to the axis of the tunnel. Outside of these "rib holes" were two rows of five holes each, known as "side holes"; the holes being about $2\frac{1}{2}$ or 3 inches in diameter. In these holes dynamite cartridges were placed, and imbedded in the dynamite were exploders, to which were

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

attached wires connnected together in chain, connected with a firing wire attached to an electric dynamo by means of a switch. It was not the custom or intention to explode all of the dynamite at•once, and no connection for explosive purposes had been made with the "rib holes" or the "side holes." The cartridges in the "cut holes" were discharged before the workmen went to supper, and when they returned at about 8 o'clock in the evening an examination showed that some of the "cut holes" had not been blown out entirely, but that the "butts" of the•"cut holes" remained. These places were reloaded, and the charges were again fired; the wires connecting with the cartridges in the "side holes" and the "rib holes" remaining detached from the exploding mechanism. At the time of the second discharge the plaintiff's intestate was in the tunnel, waiting to make his inspection; it being near the time for the change of "shifts." After the "butts" had been thus exploded, the foreman in charge of the "shift" of workmen waited for a period variously estimated from half a minute to five or six minutes, and then called out: "All over; go in, boys, and blow out the smoke." The defendant's employés started to obey this order or direction of their foreman, and the plaintiff's intestate, who was there in behalf of the city, started to go with them. He had moved forward about 35 feet when a second explosion occurred, and he was fatally injured by the flying rock, and the question presented by this appeal is whether the verdict, resting upon the defendant's negligence, can stand.

The plaintiff's intestate clearly had a right to be in the tunnel at all times when his duties as an inspector required his presence. The contract under which the work was being performed expressly provided for this, and the discharge of his duties of inspection, and of measuring up the amount of excavation accomplished, required that he should be, at some time, at the immediate point where the explosion occurred. At the time that the "butts" explosion was set off, the plaintiff's intestate, with the employés of the defendant, was at a safe point. Neither he nor the other persons present moved from this position until the foreman announced: "All over; go in, boys, and blow out the smoke." If it was proper for the defendant's employés to be ordered forward into the tunnel where the explosion had just taken place, a question was fairly presented to the jury to determine whether the plaintiff's intestate was in the exercise of reasonable care in going with them to the point where his duties called him, even though the place was filled with smoke, rendering it dark and unwholesome; and the only question remaining is whether the defendant was guilty of negligence in exposing the plaintiff's intestate to the danger which he encountered by reason of the second explosion in the "butts," for it seems to be conceded that none of the disconnected cartridges in the "rib holes" and "side holes" were exploded.

It is probably true, as held by the learned court at the trial, that this was not a case for the application of the doctrine of res ipsa loquitur. It was not a case where the mere happening of the accident imposed upon the defendant the duty of explaining it and showing freedom from negligence; but it was a case where, all the known facts

being placed before the jury, inferences were to be drawn, and one of the inferences which a jury might properly have drawn was that there was negligence in the adjustment of the firing apparatus, which prevented the explosion at the time it was intended to be exploded, and deferred it until after a period of several minutes. The evidence shows that, generally speaking, these cartridges all exploded. They were expected to explode, when properly fitted up and connected with the electric current; and the fact that one or more of these cartridges did not explode at the time the current was applied, and that one or more of them did explode some minutes after the others, indicates some defect in the cartridges, or in the electrical connection, and, as the facts were peculiarly within the knowledge of the defendant, unexplained they would justify the jury in finding that the defendant, in handling a high explosive, had been guilty of neglect constituting the proximate cause of the accident. If this was a matter of common occurrence, if, in fact, it was something to be expected, after the exercise of due care in preparing for the blast, then the jury would have the right to draw the inference of negligence from the fact that the foreman announced, "All over," and directed the employés to go in and blow out the smoke, before a proper inspection or the lapse of sufficient time.

It is true, of course, that the plaintiff's intestate was not an employé of the defendant, and he was not subject to the orders of the defendant's foreman; but he was lawfully there, and his duties required him to be present for the purpose of measuring up the work accomplished, and the defendant owed him the duty of not misleading him through the assurances of its foreman, who tells us in his testimony that he was an experienced blaster, and held a certificate of competency for such work from the New York fire department. This is not the case of one who is lawfully upon the premises of one in the employment of another, who leaves the place where he is expected to perform his services and goes to some other part of the premises for his own purposes, as in the case of Flanagan v. Atlantic Asphalt Co., 37 App. Div. 476, 56 N. Y. Supp. 18, and analogous cases, but is the case of one who is on the premises for the purpose of inspecting the work being there performed for his employer, and who is lured into an unknown danger by the assurance that the special danger is over. The declaration of the foreman cannot be properly confined to the men actually employed. It was made generally to the "boys," and the plaintiff's intestate was there in connection with the work actually under way, and he was not at some remote point where he was not expected to be, or engaged in anything on his own account, but was going forward to the point of inspection because the foreman had declared that it was all over, and he had no reason to expect any other dangers than those which were obvious to him through his experience in the work. He took the risks of fall over débris, or of detached rocks falling upon him; but he did not assume the risks of the defendant's negligence in failing to properly explode the dynamite, which had been placed for the purpose of making the excavation which he was there to inspect.

These were matters which the jury was peculiarly qualified to pass upon, taking the evidence in connection with their varied experiences and their common knowledge of practical work, and the evidence is sufficient to support the necessary findings of fact involved in the proposition.

The judgment and order appealed from should be affirmed, with costs.

HIRSCHBERG, P. J., and WOODWARD, RICH, and MILLER, JJ., concur.

JENKS, J. I dissent. The action is for negligence. The plaintiff has entered a judgment for damages upon the verdict of the jury. The defendant, as subcontractor of the contractor with the Board of Rapid Transit Commissioners for the construction of the subways under the East River, was excavating the tunnel through the rock bed of that river. The work was done night and day by "shifts" of workmen. The intestate of the plaintiff was an inspector appointed by the said board to ascertain and to report to his superiors at the end of each shift the progress of the work, and to measure the amount of excavation. This excavation was made by drilling and blasting out the rock, one-half of the heading at a time, above and below alternately. In the afternoon of September 30, 1906, with the usual method employed by the defendant, certain holes had been drilled in the heading. These holes, about 10 feet deep, were in the lower half of the face, in two rows, 6 feet apart, of 5 holes each, converging until they almost met at their ends. They were termed "cut holes." On each side of these two rows was a row of holes, known as "rib holes" or "helpers," parallel to the axis of the tunnel. Outside of these "rib holes" there were two rows, of five holes each, known as "side holes." The holes were about 2½ to 3 inches in diameter. Dynamite cartridges had been placed in the holes. Imbedded in the dynamite were exploders, to which were attached wires connected together in chain, that was connected to a firing wire attached to an electric switch. It was not intended to explode all of these holes at once, and no connection for explosive purposes had been made with the "rib holes" or the "side holes." The cartridges in the "cut holes" were discharged before the workmen went to supper. When they returned about 8 p. m., an examination showed that all of the "cut holes" had not been blown out entirely, but that the "butts" of the "cut holes" remained. These butts were reloaded, and the charges were again fired. The wires of the cartridges in the "side holes" and the "rib holes" still remained unconnected with the exploding mechanism. At this time the plaintiff's intestate was in the tunnel, awaiting to make inspection. He was an intelligent man, who had taken his degree as a civil engineer. After various employments, he passed through civil service into the service of the city, and had been engaged for a year or more in this work. His leisure hours were devoted to electrical work and scientific study. He must have understood well the character and the inherent danger of excavation by high explosives. After the firing of these "butts" the defendant's foreman waited for a period described

as "a few minutes," or "four or five minutes," and then called to certain of his own workmen: "It's all over boys; go in and blow out the smoke." These workmen obeyed, and the plaintiff's intestate left his place to go with them. He had proceeded about 35 feet, when a second explosion occurred, and he was fatally injured by the flying rock.

I think that the verdict, which rests upon the negligence of the defendant, cannot stand. Undoubtedly the plaintiff's intestate had the right as an inspector to be in the tunnel at all times when his duties of inspection required him to be there (Morris v. Brown, 111 N. Y. 318, 18 N. E. 722, 7 Am. St. Rep. 751), and, indeed, this was expressly provided in the contract. But at the time of the explosion he was in a place of safety. Had he remained there up to the time that the place where he went admitted of inspection, he would have been unhurt. He was injured because he chose to leave his place of safety to go forward into a place where he encountered the passing peril of the second explosion, at a time when it was utterly impossible even to begin his work. The first explosion produced a dense volume of smoke and gas, so that the place was so black that it was impossible for one to see anything. Ellegood, one of the workmen who went in, says that he judged that the plaintiff's intestate was opposite to him by the sound of his voice only; that he could not see him for the dense smoke. The workmen who went in carried candles, and even then could hardly see one another. These workmen were sent in to clear out the place by the application of compressed air. They had not cleared away the smoke and gas and fumes when the second explosion occurred. There is no contention that the place was even partially free, so as to permit the intestate to begin his work, when the second explosion came. There was an invitation to the intestate to go to any place in this tunnel wherever his duties required him to make an inspection and whenever an inspection could be made, and consequently there was the obligation of the defendant to him to exercise due care to keep such place at such times safe for the purposes of the inspection; but that invitation did not extend to places where the defendant could not suppose that in the course of his duty the inspector would go. Flanagan v. Atlantic Asphalt Co., 37 App. Div. 476, 56 N. Y. Supp. 18; Cowen v. Kirby, 180 Mass. 504, 62 N. E. 968; Pierce v. Whitcomb, 48 Vt. 127, 21 Am. Rep. 120; Castoriano v. Miller, 15 Misc. Rep. 254, 36 N. Y. Supp. 419. The question in such a case is: "Could the mischief have been reasonably foreseen?" Hart v. Grennell, 122 N. Y., at page 375, 25 N. E., at page 355. Could the defendant reasonably foresee that an inspector, in the attempted discharge of his duties of estimate and mensuration, would go into a place filled for a time with the fumes and gases of a recent explosion, and of such ebon darkness that workmen who went with him, for the sole purpose of clearing it, must carry candles, and even then failed to distinguish one another, although near at hand? There is not the slightest attempt to prove that at the time of the second explosion the plaintiff met his injuries in the attempted discharge of his duty.

But it is contended that the defendant may be held liable because of the utterance of its foreman, "All over, boys; go in and blow out the smoke," on the theory of invitation. This was addressed to these workmen of the defendant, who made up the "compressed air gang." First four men were sent in, and then another four to relieve them, because the place at that time "was very bad—choke you up, and gassy." It was the business of these men to go in to clear away the place by the application of compressed air through a hose. This utterance could not be construed by the plaintiff's intestate as any representation that the place was in a proper condition for him to go into, but to the contrary, for the reason that it incidentally informed him that the place was in the usual condition that follows such explosion. It was, of course, no invitation to any one outside of those workmen of the defendant whose specific duty it was to employ the compressed air machinery in order to make the place inhabitable, so to speak. All this must have been understood by the intestate. And he, not a servant of the master, upon hearing an assurance and order specifically addressed by the master to his servants for their direction alone in their work, of which the character and purpose must have been understood by him, had no right to assume that he was thereby invited to go with them for his different work, which then could not be done.

I think that the learned trial court was right in refusing to apply the doctrine of res ipsa loquitur to this case. Cosulich v. S. O. Co., 122 N. Y. 118, 25 N. E. 259, 19 Am. St. Rep. 475. And I do not find in this record proof sufficient to sustain a verdict that the defendant was negligent in the method or manner of the work.

I think that the judgment should be reversed, and a new trial should be granted; costs to abide the event.