JOHN NESTEROVICH, an Infant, by FEDORA NESTEROVICH, His Guardian ad Litem. Respondent, *v.* MOUNT OLIVET CEMETERY, Appellant.

First Department, March 13, 1925.

Cemeteries — action to recover for injuries suffered when headstone fell on infant plaintiff — defendant was not required to take care of graves in part of cemetery where accident happened — plaintiff, while visiting his father's grave in connection with religious ceremony, went for personal reasons past headstone — plaintiff was licensee — defendant had neither actual nor constructive notice of defect in headstone — defendant is not liable.

A cemetery corporation is not liable for the injuries suffered by an infant when a headstone fell upon him and broke his leg, where it appears that the infant, while visiting his father's grave in connection with a religious ceremony, went to another part of the cemetery for personal reasons, and as he passed the headstone in question, it fell upon him and broke his leg; that at the time of the accident he was not walking along a maintained path; that the accident happened in a part of the cemetery in which the defendant was not obliged to and did not maintain the graves, monuments or headstones; and that the defendant had neither actual nor constructive notice that the headstone in question was

in any way defective. The plaintiff was, at the time of the accident, a mere licensee in the place where he was injured, towards whom the defendant owed no duty of active vigilance.

CLARKE, P. J., dissents, with opinion.

APPEAL by the defendant, Mount Olivet Cemetery, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 21st day of February, 1924, upon the verdict of a jury for $1,000, and also from an order entered in said clerk's office on the 23d day of February, 1924, denying defendant's motion for a new trial made upon the minutes.

*Van Zandt & Webb* [*Frederick N. Van Zandt* of counsel], for the appellant.

*Rosalie F. Janoer,* for the respondent.

FINCH, J.:

The plaintiff, an infant of the age of seven years, accompanied his mother into the cemetery of the defendant to visit his father's grave in connection with a religious ceremony. While the ceremony was in progress the infant expressed a desire to urinate. The defendant maintained lavatories within the cemetery for the use of visitors, but the plaintiff's mother, not desiring to leave the ceremonies, instructed the plaintiff to go over by a fence, out of the way. The infant proceeded to a point 125 feet distant from his father's grave, where a headstone fell upon and broke his leg. The infant was ten years old at the time of the trial, and by consent he was allowed to testify without being sworn. He said he did not touch the stone that fell upon him. An employee of the defendant, employed as a watchman, testified he saw the infant take hold of the stone and rock it. Without going into the question of the weight of the evidence, however, and assuming that the stone fell without any interference on the part of the plaintiff, the judgment cannot stand, because it does not appear that there was any breach on the part of the defendant of any duty owing to the plaintiff.

The cemetery in question is divided into two sections. In one section the defendant undertakes to care for the graves, for which service it is compensated by the owners. In the other section the owners do not pay anything to the defendant for the care and upkeep of the graves and the defendant does not undertake to care for the same. It was in the latter section of the cemetery that the plaintiff was injured. Concededly he was not, when injured, upon a regular pathway laid out and maintained as such by the defendant. He was injured in a depression between grave mounds. There was considerable testimony as to whether

or not there was any defined pathway at the place in question, and the evidence upon the subject is not clear. It may be assumed, however, that the plaintiff might rightfully walk between the grave mounds if such course were reasonably necessary as a means of access to a grave that he was entitled to visit. (*Dutton* v. *Greenwood Cemetery Co.*, 80 App. Div. 352.) No such reason exists in the case at bar, however, but on the contrary it appears that the plaintiff was sent by his guardian " to hide himself and do something," for the convenience of himself and that of his guardian, the latter not desiring to conduct the plaintiff to the usual place provided by the defendant. Under these circumstances the plaintiff put himself in the position of a mere licensee, to whom the defendant owed no affirmative duty, and who took the premises as he found them. In *Heskell* v. *Auburn L., H. & P. Co.* (209 N. Y. 86) Judge COLLIN points out that in order to come under an implied invitation as distinguished from a mere license, there must at least be some mutuality of interest in the subject to which the visitor's business relates, and in illustration of the rule, at page 92, quotes words that are peculiarly applicable to the facts of the case at bar: " We have found no support for any rule which would protect those who go where they are not invited, but merely with express or tacit permission, from curiosity or motives of private convenience, in no way connected with business or other relations with the occupant."

In the case at bar there was no mutuality of interest in this plaintiff in the uncared-for portion of the cemetery. There was only a motive of private convenience.

In *Cusick* v. *Adams* (115 N. Y. 55) Judge GRAY, writing for the court, defines the rule generally applicable to licenses, as follows: "·The principle is now well settled by repeated adjudications, in this country and in England, that where a person comes upon the premises of another without invitation, but simply as a bare licensee, and the owner of the property, passively, acquiesces in his coming, if an injury is sustained by reason of a mere defect in the premises, the owner is not liable for negligence; for such person has taken all the risk upon himself. The theory of liability in negligence cases is the violation of some legal duty to exercise care." As sustaining the foregoing rule, see, also, *Fox* v. *Warner-Quinlan Asphalt Co.* (204 N. Y. 240) and *Vaughan* v. *Transit Development Co.* (222 id. 79).

In the last cited case, the court, by Judge POUND (at p. 82) said: " If plaintiff had had no permission to come on the premises he would have been a trespasser. If he had been there by invitation or on lawful business of interest to both parties he would have been an invitee. But he was there by permission, for his own convenience, and his status was that of a bare licensee. * * *.

" The question is, what is the proper measure of defendant's duty or care to the plaintiff? * * *.

" In *Fox* v. *Warner-Quinlan Asphalt Co.* (204 N. Y. 240, 245), * * * WILLARD BARTLETT, J., says: 'As to mere licensees the extent of the obligation of owners or occupiers of land *not chargeable with affirmative negligence* is to refrain from inflicting upon such licensees intentional or wanton injury and from setting dangerous devices thereon such as spring guns or like agencies for the purpose of harming trespassers.' * * *. More specifically, as PECKHAM, J., said in *Walsh* v. *Fitchburg R. R. Co.* (145 N. Y. 301, 306), defendant owed plaintiff, ' a duty to abstain from injuring him either intentionally, or by failing to exercise reasonable care, but it did not owe him the duty of active vigilance to see that he was not injured while upon its land merely by permission for his own convenience.' "

In 11 Corpus Juris (p. 61) it is said that " A cemetery association is not liable to owners of lots who leave the avenues or ways provided for access to lots and suffer personal injuries on that part of the ground outside of the limits of such ways."

In *Mount Greenwood Cemetery Assn.* v. *Hildebrand* (126 Ill. App. 399) it was held as follows: " The owner of a lot in a cemetery has no implied license to roam at will through all of the cemetery grounds, nor is a cemetery association charged in law with the duty of maintaining all of its grounds in a reasonably safe condition for persons thus roaming through them, and such an association is not guilty of actionable negligence where one, through the owner, enters upon the cemetery grounds and is injured while walking upon a portion of such grounds other than the roads and pathways expressly provided by the association as the means of reaching the lot to which such person had a right of way."

In *Barry* v. *Calvary Cemetery Assn.* (106 Mo. App. 358) it was held that " Where the grounds of a cemetery were laid off with roadways constructed for the accommodation of visitors, who were nevertheless permitted to walk over the ground at will, the owner of a lot in the cemetery, with a card of admission, who left the roadway and walked across the ground, became a mere licensee, and could not maintain an action against the cemetery company for damages caused by stepping into a hole left in the ground."

In 29 Cyc. 452, it is stated as a rule of law that " Where a person has entered on the premises of another under invitation express or implied he is bound by that invitation and becomes a bare licensee if he goes to some other part of the premises for purposes of his own."

In *Flanagan* v. *Atlantic Asphalt Co.* (37 App. Div. 476), an action to recover damages for personal injuries, it appeared that

the defendant had made a contract with the plaintiff's employer for the cartage of asphalt from a yard maintained by the defendant; that the plaintiff, desiring to relieve himself, left his truck and went to a place near a gate in the fence inclosing the yard, where he was injured by the fall of the gate through some unknown cause. Held, that when the employee left that portion of the premises where his duties required him to be and went to the gate for reasons of his own, he went at his own risk and, when in that position, was not entitled to assume that the defendant would use all reasonable care to protect him.   Mr. Justice Ingraham said: " We have the case of a person upon the premises of another, voluntarily and for his own purpose leaving a place of safety and going to another place.   There was nothing that required him to select this particular position near the gate; nor is there anything to show that the defendant anticipated that the workmen employed upon the carts would place themselves in such a position as to require it to guard against the · gate's falling.   *   *   *.   The first question presented is whether the defendant owed any duty to the plaintiff to keep this gate, when open, in such a condition that it could not fall, so that a neglect to perform such duty would give the plaintiff a cause of action against the defendant.

" *   *   *   It is certain that no work that the plaintiff was called upon to do required him to use this part of the yard, and there was no invitation of the defendant to the plaintiff, express or implied, to use this gate or fence for the purpose for which he did use it.   It is said that the defendant provided no water closet for the men, but it was under no obligation to do so; and its failure to furnish such a convenience was certainly no invitation to the workmen to use any portion of the premises that they saw fit for such purpose.   It is difficult to see, therefore, what duty the defendant owed to the plaintiff in connection with this private purpose."

Moreover, there is not the slightest evidence of any circumstances to have put the defendant on actual or constructive notice as to the dangerous condition of the headstone which fell upon the plaintiff.   Evidence as to the condition of the cement or pin was only visible after the stone fell.   The testimony shows that said monument was properly set in the first instance.   It was erected by the owner of the burial plot subject only to regulations as to the size thereof.   Although higher originally than the rules of the defendant required, the base upon which it rested was sunk into the ground to take up the excess height, which fact gave it greater stability.   The headstone was set in cement upon the base, and in addition a metal pin connected the two, set partly in the base and partly in the headstone, at the center thereof.   The headstone

was in an erect position up to the time of the accident, and there is no evidence in the record that previous to the accident there was anything to indicate that the headstone was not securely fastened to the base. While the stone had been in position sixteen years, there is no evidence that a headstone would ordinarily require resetting within such a period. The facts in the case at bar are thus distinguished from those in the case of *Dutton* v. *Greenwood Cemetery Co.* (80 App. Div. 352), relied on by the respondent. In that case the plaintiff's child was injured by the fall of a headstone while walking along a path which gave access to the grave that was being visited, and it further appears that the headstone had been improperly set originally and that it was visibly in a dangerous condition. Among the reasons stated by the court in that case for holding the defendant liable are the following: " The defendant owning the property and lawfully assuming to supervise and control its care and maintenance, *including the keeping of the monuments and tombstones in this portion of the grounds* in safe and proper condition, the application to it of the general rule of liability for negligence necessarily follows." (Italics not in original.)

As stated, in the case at bar the defendant did not assume to care for and maintain the graves and monuments in the well-defined section of the cemetery where the plaintiff was injured. To impose upon the defendant the duty of insuring the stability and safety of each and every tombstone in the uncared-for section of the cemetery, irrespective of any question of notice to the defendant of any unsafe condition, in effect, would remove any distinction between the cared-for and the uncared-for sections of the cemetery, and either compel the defendant to render service without compensation in the latter section or to make its charges therein commensurate with the service rendered. Thus a holding of liability in the case at bar would be to lay down a measure of care that would prevent the keeping of a portion of a cemetery as the uncared-for portion and might require those to go to Potter's Field or a Pauper's Grave whose limited means would otherwise afford them the comfort of purchasing a cheaper plot in such uncared-for portion of the cemetery.

It follows that the judgment and order appealed from should be reversed, with costs, and the complaint dismissed, with costs.

DOWLING, MCAVOY and MARTIN, JJ., concur; CLARKE, P. J., dissents.

CLARKE, P. J. (dissenting):

The infant plaintiff was a boy ten years old at the time of the trial. On the 8th of May, 1921, the infant plaintiff, then seven

years old, had gone with his mother to attend religious services at his father's grave at Mount Olivet Cemetery at Maspeth, L. I. This grave was a short distance from the Russian chapel. It was the custom, after the services in the chapel, for the priests to go to the different graves for prayers. The boy wanted to urinate and his mother said he could not do it there with the priests and other people around. It was too far to go to the public lavatory. So she told him to go down to the fence. He left the grave and went down across the avenue, eighteen feet wide, and proceeded as far as the Earl grave, about one hundred and twenty feet away from his father's grave. On this grave was a stone which weighed 125 pounds. As he was passing it, it fell on him and fractured his leg. This stone had been up for some years and was in a part of the cemetery known as the uncared-for part, that is, the lot owners contributed nothing to the up-keep of that part of the cemetery. The graves there are very close, in length they are parallel to the roadway, and on each side and at each end, by reason of the mounds, there is a space eighteen to twenty-two inches wide which is alluded to as a path. The defendant claims they are not paths, that there are regular paths four feet wide, eighty feet apart. The defense had one witness, a watchman who said this boy rocked the stone and that is what made it fall. The boy says he did not touch the stone, that he was a foot and a half from it when it fell. The court gave a very careful charge, in which he said: " The contention of the plaintiff in this case is that those spaces as prolonged constituted paths; that they afforded access to graves, and that those spaces at the southerly or northerly ends of graves as laid out, running in an easterly and westerly direction, were as much ' paths ' as the spaces on the easterly and westerly side of graves, and they say they were recognized as paths because they say that they afforded the only means or the most natural means at least for those who desired to go to the spot where somebody had been interred, to go, and that they were recognized by the defendant corporation as being the means supplied by it for reaching the different graves.

"A person lawfully inside of a cemetery may lawfully walk along any path. He is not confined to a walk along a path which leads directly to the grave that he desires to visit. He may walk along a path which is in a different part of the cemetery. He may stand in front of a grave which is the grave of somebody that he has known nothing about, and has never heard of, and as long as he is on a path, that is to say, something that has been set apart for the use of those who have occasion to visit graves, or their approach to those graves, he is not a trespasser.

" If the space between the southerly end of the mound on the

Earl grave and the northerly end of the mound on the grave to the south of it was a part of a path, and John met his accident and received his injury when in that space, then at that time he was not a trespasser.

" * * * If it fell [alluding to the stone], no matter how weak it may have been, because John put his hands on it and moved and swayed it, ' rocked ' it, as the witness for the defense, Dieckmann, says to and fro, then this defendant is not responsible for the injury which the boy received as a result of the fall of that stone upon him.

" If that stone fell without any conscious action of the boy bringing about its fall, without his having laid hand on it, and fell upon the boy while the boy was on a space inside of that cemetery which to the outward eye appeared to be a path, and seemed to be a portion of the way leading to the grave,— if that stone fell because it had been allowed to get into a position of manifest disrepair, where it was on a slant so great as to be visible to the eye of an onlooker, then you may consider the question as to whether or not the defendant corporation exercised due care with respect to the maintenance of safety in the paths of the cemetery at the point adjacent to that stone.

" There is a duty of care on the part of a cemetery corporation, and it has been said and very wisely and properly said that it cannot be doubted that such a corporation ' owes some duty of care to those who are lawfully on the premises to see to it that they are reasonably safe, in so far as ordinary diligence will accomplish that result. It is not necessary that express knowledge of the dangerous condition of a stone in a cemetery be shown to have been possessed by the officers of the corporation before liability attaches if they should have had, by the exercise of reasonable oversight, knowledge of such condition.' "

Thus, it seems to me, the learned court fairly left the questions of negligence and contributory negligence to the jury.

In *Dutton* v. *Greenwood Cemetery Co.* (80 App. Div. 352) a little child, two and one-half years old, was injured by the fall of a tombstone in Greenwood Cemetery. The plaintiff's plot and the one from which the tombstone fell were side by side, and both were in a large " public lot," as it was called by the defendant. In this particular public lot there were more than 500 graves and about 100 tombstones. The court said: " Persons having occasion to visit this portion of the grounds are accustomed to walk between the graves as the only means of access to their own plats or subdivisions. * * *. It cannot be doubted that the defendant owes some duty of care to those who are lawfully on the premises to

First Department, March, 1925.           [Vol. 212

see to it that they are reasonably safe in so far as ordinary diligence will accomplish that result. The learned counsel for the defendant conceded on the trial that if any liability existed it attached to the defendant, but he insisted that express knowledge of the dangerous condition must first be acquired before the defendant can be held to be under any obligation to act. There is, however, nothing in the situation to remove the case from the operation of the general rules governing constructive notice. The defendant is the absolute owner of the property and in full possession and control of it, those to whom receipts for lots have been given having no estate or interest in the land as such, but merely a right to its use for burial purposes, subject to the rules, regulations and general control of the defendant. * * *. The stone which fell in this case had been set more than a dozen years and apparently improperly. There were holes in the base and corresponding holes in the headstone for the purpose of inserting metallic dowels to keep the latter in place, but no dowels had been placed in the holes. The base was beveled from the point of contact with the headstone, and the stone must have gradually shifted so that it was ready to fall at the merest touch at the time of the accident. The evidence given by the plaintiff's wife was to the effect that the little girl was not playing at the time and did not touch the stone unless her attire may have brushed it as she was passing, while the defendant proved that had the stone been set in its proper place upon the base, even without dowels, its weight would have kept it firmly so that it could only be dislodged by the application of considerable force beyond the power of the child. The defendant owning the property and lawfully assuming to supervise and control its care and maintenance, including the keeping of the monuments and tombstones in this portion of the grounds in safe and proper condition, the application to it of the general rule of liability for negligence necessarily follows. * * *. It is obvious from what has been said that there is no element of contributory negligence in the proof, and that the defendant's negligence is fairly established from the condition of the tombstone on the day it fell, and which must have been discoverable upon ordinary inspection, but which inspection was never made; and also from the length of time which had elapsed since the stone was improperly placed in the first instance."

In the case at bar there was evidence that there was no cement between the stone and the base, that the stone was " clean," that there were pieces of cement that came from between the stone and the base lying around where a metal pin was protruding in a perpendicular way between the stone and the base, that this pin was rotted away, " and when you took it in your hand it would melt

between your fingers like sand." There was no evidence of any inspection of the condition of the monuments after they were erected, while there was evidence that the grass was cut in this part of the cemetery two or three times a year.

It seems to me that a question of fact was presented and, the question having been determined by the jury in favor of the plaintiff, that the judgment should be affirmed.

Judgment and order reversed, with costs, and complaint dismissed, with costs.